**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
-----------------------------x
                             :
MICHAEL BRAHAM               :    Civ. No. 3:15CV01094(JCH)
                             :
v.                           :
                             :
BRIAN PERELMUTER, et al.     :    November 23, 2016
                             :
-----------------------------x
```

## RULING ON MOTION FOR LEAVE TO FILE AMENDED COMPLAINT [Doc. #130]

Pending before the Court is a motion by self-represented plaintiff Michael Braham ("plaintiff") for Leave to File an Amended Complaint. [Doc. #130]. Plaintiff seeks to file a Third Amended Complaint to add new allegations against existing defendants Commissioner Semple and Johnny Wu in their individual capacities; to add five new defendants; and to add various factual allegations against the current defendants. See generally Doc. #130-2. For the reasons set forth below, plaintiff's Motion for Leave to File an Amended Complaint is **DENIED**.

## I.   BACKGROUND

On July 17, 2015, plaintiff, an incarcerated self-represented party, filed a Complaint and a Motion for Injunctive Relief against defendants Brian Perelmuter, Johnny Wu, Commissioner Scott Semple, and John Doe. [Docs. ##29, 30]. On July 22, 2015, Chief Judge Janet C. Hall issued an Initial

~ 1 ~

Review Order, dismissing plaintiff's claims for monetary damages against defendants Wu and Semple in their individual capacities. [Doc. #6]. Plaintiff filed a motion to amend his Complaint on December 4, 2015, which Judge Hall granted, in part, on March 16, 2016. [Docs. ##62, 86]. Specifically, at that time, plaintiff was permitted to amend his Complaint to allege claims against a new defendant, Health Services Administrator Brown, in her individual capacity, and to add a claim sounding in retaliation against existing defendant Perelmuter in his individual capacity. See Doc. #86. Judge Hall denied plaintiff's motion to amend his Complaint to add a claim of conspiracy, to add claims against defendants Wu and Semple in their individual capacities, and to add Richard Benoit as a defendant. See id. Plaintiff filed an Amended Complaint in accordance with this order on March 29, 2016. [Doc. #92]. He filed a Second Amended Complaint on April 18, 2016, adding defendant Sue O'Loughlin, whose identity had recently been disclosed to plaintiff. [Doc. #98]. At that time, plaintiff believed, based on the discovery materials he had received to date, that O'Loughlin "was responsible for the scheduling and facilitation" of plaintiff's dental treatment. Doc. #98 at 5.

Defendants filed an Answer on May 17, 2016.[1] [Doc. #103]. Written discovery closed on May 30, 2016, and depositions were to be completed by June 30, 2016. [Doc. #97 at 4].

On June 17, 2016, plaintiff filed a "Notice of Intent to Amend Complaint."[2] [Doc. #106]. Plaintiff's Notice indicated that, based on answers he had received to the written depositions of defendants Brown and O'Loughlin, plaintiff would be seeking leave of the Court to amend his Complaint to add two additional defendants: "Sheryl Estrom and the 'facility UR tracker,' or the 'CMHC UR Scheduler'[.]" Doc. #106 at 1.

Plaintiff sought this amendment based on new information he had received relating to the question of who was responsible for scheduling an appointment for plaintiff to receive dental

---

[1] Defendant O'Loughlin has not yet filed a response to plaintiff's Second Amended Complaint. On October 19, 2016, Judge Hall issued an Order directing service of the Second Amended Complaint and a waiver of service of process upon O'Loughlin at her place of employment. See Doc. #147 at 1-2. O'Loughlin's response to plaintiff's Second Amended Complaint is due within sixty days from the date the Notice and Waiver of Service were sent to her, or, on or before December 20, 2016. See Doc. #147 at 2.

[2] Plaintiff's notice was docketed as a Motion to Amend Complaint. See Doc. #106. Plaintiff notes that although prison officials received the notice for docketing on June 2, 2016, "human or mechanical error necessitated that it be rescanned and emailed on June 17, 2016." Doc. #141 at 2 n.2. Indeed, plaintiff's notice is dated June 1, 2016, and is stamped as received by Cheshire Correction Institution on June 2, 2016, and then again on June 17, 2016. See Doc. #106 at 1.

treatment. Plaintiff had propounded written deposition questions
to defendant O'Loughlin on April 12, 2016, [Doc. #112-7] and she
responded on May 18, 2016. [Doc. #112-8]. Ms. O'Loughlin
testified that she was not responsible for booking the dental
surgery appointments for prisoners. Specifically, she testified
as follows:

> Q15: Okay, Ms. O'Laughlin [sic], isn't it true that you
> are responsible for scheduling dental surgeries for
> prison inmates?
>
> A15: Let me clarify something for you, while I am an
> employee of UCONN Health Center, technically I work for
> the School of Dental Medicine under UCHC. It is the
> primary responsibility of clerks to book office
> appointments. I am not a clerk.
>
> ....
>
> Q17: Please explain the process by which you schedule
> these inmate surgeries.
>
> A17: Today, the process is as follows: The School of
> Medicine is contacted by CMHC with requests for
> available dates to book patient office visits. The oral
> and Maxillofacial Surgery Department offers varying
> dates over the next month or so and the CMHC chooses
> which patients that are to be assigned.
>
> Q18: Now, according to the Director of Dental Services,
> Dr. Richard Benoit, once a dental surgery is approved by
> the Utilization Review Committee, the case is referred
> to you for scheduling, is that correct?
>
> A18: No, as I said before, UCONN Health Center
> coordinates a date with CMHC at the availability of the
> UCONN Health center dental surgeons.

Doc. #112-7 at 3; Doc. #112-8 at 2-3. Plaintiff thus
continued to seek information regarding the identity of any

employees tasked with making dental appointments for
prisoners like him.

On July 27, 2016, the undersigned held a telephonic Status
Conference, on the record. [Doc. #118]. At the conference, the
Court ordered counsel for the defendants to "use her best
efforts to identify the specific clerk responsible for
scheduling plaintiff's dental appointment" and to provide the
name of said clerk to plaintiff on or before August 17, 2016.
Doc. #118 at 2. In light of the Court's rulings at that
conference, the Court extended the dispositive motion deadline
from July 29, 2016, to September 30, 2016. Id. at 4.

On August 18, 2016, defendants filed a Status Report
asserting that "the identity of the requested clerks cannot be
readily attained," and that "Ms. O'Loughlin was the individual
who assumed responsibility for scheduling surgical procedures
with oral surgeons in the out-patient clinic in the School of
Dental Medicine under UCHC during the period 2014-2015." Doc.
#122 at 1. This assertion was in direct contradiction to
defendant O'Loughlin's sworn deposition testimony. On August 31,
2016, the undersigned held a telephonic status conference to
address this ongoing issue. See Doc. #129. During the
conference, plaintiff again indicated that he intended to seek
leave to amend his Complaint to add additional defendants.
Plaintiff was advised "that the Court is unlikely to grant such

a motion at this late stage of the proceedings, particularly where discovery is now closed and the deadline for filing dispositive motions is less than a month away." Id. at 3. On September 2, 2016, plaintiff filed the instant Motion to Amend his Complaint, along with a proposed Third Amended Complaint. [Doc. #130].

## II.  LEGAL STANDARD

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, a party may amend his pleading "only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Rule 21 governs the addition of parties: "On motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21.

> With respect to the interaction of Rules 15(a) and 21, it has been held that Rule 15(a) generally governs the amendment of complaints, but in the case of proposed amendments where new defendants are to be added, Rule 21 governs. The perceived supremacy of Rule 21 is, however, of no practical consequence, since it is generally held that the standards governing motions to amend under Rule 15 apply with equal force to motions to add parties under Rule 21.

Meyers v. Kishimoto, No. 3:14CV535(CSH), 2015 WL 4041438, at *3 (D. Conn. July 1, 2015) (quotation marks and citations omitted).

In determining whether to grant leave to amend, the Supreme Court has held:

> If the underlying facts or circumstances relied upon by
> a plaintiff may be a proper subject of relief, he ought
> to be afforded an opportunity to test his claim on the
> merits. In the absence of any apparent or declared reason
> — such as undue delay, bad faith or dilatory motive on
> the part of the movant, repeated failure to cure
> deficiencies by amendments previously allowed, undue
> prejudice to the opposing party by virtue of allowance
> of the amendment, futility of amendment, etc. — the leave
> sought should, as the rules require, be 'freely given.'

Foman v. Davis, 371 U.S. 178, 182 (1962). Accordingly, where, as
here, a plaintiff moves for leave to amend the complaint to add
new claims and parties, a court will look to factors including
whether the opposing party is unduly prejudiced, whether
plaintiff has unduly delayed in seeking the proposed amendment,
and whether the proposed amendment would be futile. See, e.g.,
Jin v. Metro. Life Ins. Co., 310 F.3d 84, 101 (2d Cir. 2002)
("Leave to amend should be freely granted, but the district
court has the discretion to deny leave if there is a good reason
for it, such as futility, bad faith, undue delay, or undue
prejudice to the opposing party."(citing Foman, 371 U.S. at
182)).

### A.  **Prejudice**

"[P]rejudice to the opposing party resulting from a
proposed amendment [is] among the most important reasons to deny
leave to amend." AEP Energy Servs. Gas Holding Co. v. Bank of
Am., N.A., 626 F.3d 699, 725 (2d Cir. 2010) (quotation marks and
citation omitted).

> In determining what constitutes "prejudice," we consider whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.

Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993). "One of the most important considerations in determining whether amendment would be prejudicial is the degree to which it would delay the final disposition of the action." H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc., 112 F.R.D. 417, 419 (S.D.N.Y. 1986) (collecting cases). Thus, "a proposed amendment is especially prejudicial when discovery [has] already been completed and non-movant [has] already filed a motion for summary judgment." Krumme v. WestPoint Stevens Inc., 143 F.3d 71, 88 (2d Cir. 1998) (quotation marks and citation omitted); see also Ansam Assocs., Inc. v. Cola Petroleum, Ltd., 760 F.2d 442, 446 (2d Cir. 1985) ("Moreover, permitting the proposed amendment would have been especially prejudicial given the fact that discovery had already been completed and [defendant] had already filed a motion for summary judgment."). Further, "the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." Block, 988 F.2d at 350 (quotation marks and citation omitted).

**B.   Futility**

"Although Fed. R. Civ. P. 15(a) provides that leave to amend should be given freely when justice so requires, where ... there is no merit in the proposed amendments, leave to amend should be denied." Health-Chem Corp. v. Baker, 915 F.2d 805, 810 (2d Cir. 1990); see also S.S. Silberblatt, Inc. v. E. Harlem Pilot Block--Bldg. 1 Hous. Dev. Fund Co., 608 F.2d 28, 42 (2d Cir. 1979)("A trial court does not abuse its discretion in denying leave to amend a complaint which even as amended would fail to state a cause of action."). "An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002) (citing Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991)). See also, Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991). "Thus, the Court cannot consider facts outside the pleadings in considering the futility of an amendment." A. ex rel. A. v. Hartford Bd. of Educ., No. 3:11CV1381(CSH), 2012 WL 3887020, at *4 (D. Conn. Sept. 6, 2012).

**C.   Undue Delay**

While undue delay in bringing a motion to amend is a factor for the Court to consider in determining whether leave to amend is appropriate, "[m]ere delay, ... absent a showing of bad faith

or undue prejudice, does not provide a basis for a district court to deny the right to amend." State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981); see also Middle Atl. Utilities Co. v. S. M. W. Dev. Corp., 392 F.2d 380, 384 (2d Cir. 1968) ("The three-year delay from the filing of the initial complaint is an inadequate basis for denying a motion to amend. It may be a factor to be considered but unless the motion either was made in bad faith or will prejudice defendant, delay by itself is not enough to deny the requisite relief." (citation omitted)).

"The court plainly has discretion, however, to deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant." Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990).

> Moving to amend pleadings after the close of discovery may constitute an inordinate delay even if certain testimony adduced during discovery purportedly gives the opposing party "full and fair notice" of a new theory not alleged in the operative complaint. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 201–02 (2d Cir. 2007). This is because a defendant that received notice in the complaint of the asserted claims and the grounds on which they rest "may conduct ... trial preparation accordingly and is not required, based on the plaintiff's subsequent conduct in litigation, to anticipate future claims that a plaintiff might intend to pursue." Id. at 202[.]

Hutter v. Countrywide Bank, N.A., 41 F. Supp. 3d 363, 371 (S.D.N.Y. 2014).

## III. DISCUSSION

Plaintiff seeks to amend his Complaint to add several new defendants, to replead allegations against two existing defendants, and to add new factual allegations. In support of his motion, plaintiff argues that he has not unduly delayed in seeking these proposed amendments, and that therefore, leave should be granted to amend. See Doc. #130-1 at 2, Doc. #141 at 1-2. Plaintiff contends that he promptly filed a notice to the Court of his intent to seek amendment in June 2016, and that he has diligently prosecuted this case from its inception. See Doc. #130-1 at 2; Doc. #141 at 1-2. Plaintiff argues that he has only recently obtained through discovery the information needed to assert the new allegations. See Doc. #130-1 at 2-3; Doc. #141 at 2. Further, plaintiff argues that defendants will not be unduly prejudiced, as it was their own delay throughout the pendency of this action that caused the need for plaintiff to amend at this time. See Doc. #130-1 at 2.

Defendants oppose plaintiff's motion for leave to amend. [Docs. ##110, 133].[3] Defendants assert that granting plaintiff's

---

[3] On June 29, 2016, defendants filed an opposition to plaintiff's Notice to Amend, which, as previously noted, had been docketed as a Motion to Amend. [Doc. #110]. On September 23, 2016, defendants filed an opposition to plaintiff's Motion to Amend. [Doc. #133]. The Court has considered the arguments made in both submissions.

motion would necessitate additional discovery and would cause undue prejudice to defendants. As noted, discovery has closed in this matter, and defendants have now filed their motion for summary judgment.[4] See Doc. #133 at 3. Defendants also claim that plaintiff was aware of the identities of the proposed new defendants and the information serving as a basis for the proposed new allegations months prior to the filing of the instant motion. See id. at 3-4. Thus, they argue, plaintiff could have developed the proposed claims while discovery was open, and could have sought leave to amend earlier in the case. See id. Finally, defendants argue that it would be futile to permit the proposed amendments, specifically with reference to plaintiff's attempts to replead claims against defendants Semple, Wu, and against Benoit. See id. at 4. The Court will address each of the proposed amendments in turn.

**A.   Addition of New Defendants Erica Roman, David Salgado, and Charlene DeCampos**

Plaintiff seeks to add Correctional Managed Health Care ("CMHC") employees Erica Roman, David Salgado, and Charlene DeCampos as defendants. See Doc. #130-2 at 2. Plaintiff alleges that these three individuals each had responsibilities concerning the scheduling of an appointment for plaintiff's

---

[4] Defendants' opposition papers were filed on September 23, 2016; defendants filed a Motion for Summary Judgment on September 30, 2016. [Doc. #137].

surgery. See id. at 8-9. Specifically, plaintiff claims that Roman and Salgado were tasked with requesting plaintiff's surgical dental appointment at the University of Connecticut Health Center's School of Dental Medicine ("UConn"). See id. Plaintiff alleges that these proposed defendants were required to fax an appointment request to defendant Sue O'Loughlin every two weeks until the appointment was "completed." Id. By failing to fulfill these responsibilities, plaintiff contends that these proposed defendants caused plaintiff's surgery to be delayed for over a year, and that said acts or omissions constitute deliberate indifference to plaintiff's medical needs. See id. at 8-9.

Plaintiff's allegations are based, in part, on the affidavit of Dr. Richard Benoit, the Director of Dental Services for UConn and CMHC. See Doc. #130-1 at 3; Doc. #130-2 at 37. He states: "The individual who grants appointments in the Oral Surgery Department is Assistant Nurse Manager Sue O'Laughlin. The CMHC staff who email or fax requests to her are David Salgado, or Erica Roman. It is impossible to say who faxed over the request to Ms. O'Laughlin after it was approved as both likely did since it was sent every two weeks after that until the appointment was complete." Doc. #130-2 at 37 [sic]. Defendants have also represented that they "do not dispute that the request for extraction, though approved, was not scheduled,

regardless whether it was requested by David Salgao, Erica Roman or Sue O'Laughlin." Doc. #112 at 5 [sic].

Plaintiff's proposed Third Amended Complaint also asserts claims against Charlene DeCampos, alleged to be the individual responsible for contacting UConn to request available dates for plaintiff's surgery. See Doc. #130-2 at 9. Plaintiff claims that DeCampos failed to request an available date, or, if she did request a date, "CMHC's policy and practice of pre-exempting service to accommodate patients with more urgent clinical needs, necessitated DeCampos cancelling Braham's surgery." Doc. #130-2 at 9. Plaintiff alleges that these acts and/or omissions caused plaintiff's surgery to be delayed for over a year. See id.

Plaintiff has unduly delayed in bringing the instant claims against these proposed new defendants. Plaintiff has long been aware of the identities of Roman and Salgado, who were disclosed in an affidavit of Benoit dated March 30, 2016. Defendants represent that this information was provided to plaintiff on April 1, 2016. See Doc. #133 at 3. Indeed, plaintiff requested discovery related to these individuals on April 6, 2016. See Doc. #105-1 at 13. Defendants also state that plaintiff learned about the identity and role of Charlene DeCampos by June 16, 2016. See Doc. #133 at 3.

The Court recognizes that plaintiff has made numerous attempts to ascertain the identity of the individual or

individuals responsible for the scheduling of his dental procedures. Conflicting information has been provided to plaintiff during discovery in this regard. To date, defendants have not identified the specific clerk responsible for scheduling plaintiff's dental appointment. Instead, defendant O'Loughlin has "assumed responsibility" for scheduling procedures, despite her contradictory testimony. Doc. #122 at 1; see also Doc. #118 at 1-2. Nevertheless, neither Roman, nor Salgado, nor DeCampos was tasked with scheduling plaintiff's surgery.

Plaintiff's Eighth Amendment claims arise from allegations of inadequate dental care. "A cognizable claim regarding inadequate dental care, like one involving medical care, can be based on various factors, such as the pain suffered by the plaintiff, the deterioration of the teeth due to a lack of treatment, or the inability to engage in normal activities[.]" Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (internal citations and explanatory parentheticals omitted). "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quotation marks and citations omitted). "[P]rison officials

must ensure that inmates receive adequate food, clothing, shelter, and medical care[.]" Id. However, "[b]ecause the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation." Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003). Thus, "[i]n order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove deliberate indifference to his serious medical needs." Chance, 143 F.3d at 702 (quotation marks and citation omitted).

Here, plaintiff alleges that he suffered great pain and his teeth deteriorated due to a unconstitutional delay in dental treatment. See generally Doc. #98. While the scheduling of plaintiff's dental appointment is central to this suit, the individual who is claimed to have been deliberately indifferent to plaintiff's serious dental needs by failing to schedule plaintiff's surgery -- O'Loughlin -- is a current defendant in this action. Plaintiff has not pled facts sufficient to establish that Roman, Salgado or DeCampos acted with deliberate indifference to plaintiff's serious medical needs. Thus, amendment to include these additional individuals as defendants would be futile.

The Court has also considered the substantial prejudice that would result to the defendants in permitting the addition

~ 16 ~

of these three defendants. This case is close to resolution.
Discovery has closed, and defendants' summary judgment motion
was filed while the instant motion to amend was pending. During
the pendency of this matter, the Court was called upon to
resolve several discovery motions, and the Court conducted
numerous telephonic and in-person conferences to address
disputes between the parties. It is clear to the Court that
permitting plaintiff to add new parties and claims would
significantly delay the resolution of the matter, would require
additional discovery, and would "give rise to motion practice
aimed at summary dismissal of [those] claim[s]." Vermont Mut.
Ins. Co. v. Ciccone, No. 3:09CV00445(VAB), 2015 WL 4999894, at
*2 (D. Conn. Aug. 21, 2015).

Accordingly, the Court finds that the factors weigh against
permitting plaintiff to amend his Complaint to add Roman,
Salgado and DeCampos as defendants in this matter, and the
motion to amend is denied as to these requests.

### B.   Addition of New Defendant Sheryl Estrom

Plaintiff also seeks to add Sheryl Estrom as a defendant in
this matter. See Doc. #130-2 at 15. Plaintiff alleges that
Estrom was employed by CMHC as the Health Services Review
Coordinator, and that her duties included reviewing prisoners'
medical grievances. See id. Plaintiff alleges he filed a
grievance on April 5, 2015. See id. at 16. He contends that even

~ 17 ~

though he followed the Department of Correction procedures, Estrom returned plaintiff's grievance without disposition, thereby delaying, denying and interfering with plaintiff's dental treatment. See id. Plaintiff alleges that Estrom's "rejection of Braham's grievance was intended to deny him access to the DOC's administrative remedies process." Id.

Plaintiff was aware of the identity and role of this individual in April of 2015, as she signed, dated and returned the grievance to him. See Doc. #130-2 at 35. "A court may deny a motion to amend when the movant knew or should have known of the facts upon which the amendment is based when the original pleading was filed, particularly when the movant offers no excuse for the delay." Ruotolo v. City of New York, No. 03CV5045(SHS), 2006 WL 2372236, at *2 (S.D.N.Y. Aug. 16, 2006), aff'd, 514 F.3d 184 (2d Cir. 2008) (quotation marks and citation omitted). As noted above, any amendments to the Complaint at this late date carry significant prejudice to the defendants.

Accordingly, the Court finds that the factors weigh against permitting plaintiff to amend his Complaint to add Estrom as a defendant in this matter, and the motion to amend is denied as to this request.

C.    <u>Addition of Claim Against Defendant Johnny Wu in His
      Individual Capacity</u>

Plaintiff seeks to add a claim against existing defendant

Johnny Wu, in his individual capacity, for monetary damages. <u>See</u>

Doc. #130-2 at 16-17. Plaintiff's Second Amended Complaint

alleges a claim against defendant Wu in his official capacity,

for injunctive relief. [Doc. #98]. On two prior occasions, the

Court has denied plaintiff's requests to plead allegations

against defendant Wu in his individual capacity. <u>See</u> Doc. #6 at

4; Doc. #86 at 9-10. Plaintiff's proposed Third Amended

Complaint newly alleges that defendant Wu failed to train the

other co-defendants in this matter, that "Wu's acts and

omissions to act created [] policies and customs that caused

Braham to be denied adequate dental care" and that these acts

and omissions "constitute deliberate indifference to Braham's

serious dental needs." Doc. #130-2 at 17.

"[T]o establish a defendant's individual liability in a

suit brought under §1983, a plaintiff must show, <u>inter alia</u>, the

defendant's personal involvement in the alleged constitutional

deprivation." <u>Grullon v. City of New Haven</u>, 720 F.3d 133, 138

(2d Cir. 2013) (collecting cases).

> The personal involvement of a supervisory defendant may
> be shown by evidence that: (1) the defendant
> participated directly in the alleged constitutional
> violation, (2) the defendant, after being informed of
> the violation through a report or appeal, failed to
> remedy the wrong, (3) the defendant created a policy or

custom under which unconstitutional practices occurred,
or allowed the continuance of such a policy or custom,
(4) the defendant was grossly negligent in supervising
subordinates who committed the wrongful acts, or (5) the
defendant exhibited deliberate indifference to the
rights of inmates by failing to act on information
indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citation
omitted).

Plaintiff's proposed Third Amended Complaint does not allege facts sufficient to infer that defendant Wu was personally involved in plaintiff's alleged constitutional deprivation. Plaintiff's unsupported, conclusory allegation that Wu's actions or inactions created "policies and customs" that led to the harm alleged is insufficient to subject defendant Wu to liability in his individual capacity for his supervisory role. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not [meet the facial plausibility standard]. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." (quotation marks and citation omitted)). See also Farrow v. Martinez, No. 3:16CV333(JAM), 2016 WL 3546205, at *2 (D. Conn. June 23, 2016) ("[C]onclusory, unsupported allegations of ... the existence of a policy are simply insufficient to establish liability of supervisory prison officials under §1983." (quotation marks and citation omitted)); Bennett v.

Goord, No. 03CV6577, 2006 WL 2794421, at *5 (W.D.N.Y. Aug. 1, 2006), aff'd, No. 06-3818, 2008 WL 5083122 (2d Cir. Dec. 2, 2008) (finding no personal involvement by supervisory employee where "plaintiff neither states what the policies are, nor does he provide any evidence supporting his assertion that [defendant] allowed any policy or custom under which unconstitutional practice occurred to continue").

Further, plaintiff has not alleged that defendant Wu was aware of plaintiff's medical needs and deliberately ignored them. See Chance, 143 F.3d at 702 ("An official acts with the requisite deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" (quoting Farmer, 511 U.S. at 825)). As plaintiff has not alleged a plausible claim against defendant Wu for liability in his individual capacity, permitting amendment would be futile.

Additionally, plaintiff has unduly delayed in filing the request to amend for this claim. Wu has been a defendant in this matter since its inception and plaintiff has offered no persuasive reason for his delay in requesting leave to amend with regards to this defendant. The Court has also considered the prejudice that would result if plaintiff was permitted to

proceed against Wu in his individual capacity, and has determined it is significant.

Accordingly, the Court finds that the factors weigh against permitting plaintiff to amend his Complaint to proceed against Wu in his individual capacity, and the motion to amend is denied as to this request.

### D. Addition of Claim Against Commissioner Scott Semple in His Individual Capacity

Plaintiff also seeks to add a claim against existing defendant Semple, in his individual capacity, for monetary damages. The Court has twice previously denied this request. See Doc. #6 at 4; Doc. #86 at 5-6. Plaintiff's proposed Third Amended Complaint newly alleges that defendant Semple is responsible for the development and implementation of Department of Correction policies and procedures; that some of these policies and practices are "diametrically opposite" to CHMC policies and procedures; that this "opposition" caused interference with plaintiff's dental care; and that interference was "indicative of foreseeable dental care deficiencies that are evident from CMHC's written policies." Doc. #130-2 at 18.[5]

_____

[5] Plaintiff's allegations regarding the policies at issue relate to his claims under the Eighth Amendment for monetary damages. Plaintiff does not seek a declaratory judgment that said policies are unconstitutional, nor does he seek an injunction to enjoin the defendants from implementing these policies prospectively. Plaintiff has sought to amend his Complaint several times during the pendency of this lawsuit, but his focus

Plaintiff further alleges that defendant Semple was made aware of the deficiencies through prior lawsuits filed against him. See id.

"[M]ere linkage in the prison chain of command is insufficient to implicate a state commissioner of corrections or a prison superintendent in a §1983 claim." Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003) (quotation marks and citation omitted); see also Gill, 824 F.2d at 196; Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). Here, plaintiff has not pled facts sufficient to subject defendant Semple to liability in his individual capacity. Plaintiff has offered no factual basis for his conclusory allegation that defendant Semple was personally involved in actions that directly caused plaintiff harm. Thus, the proposed amendment would be futile.

Additionally, plaintiff has unduly delayed in filing the request to amend for this claim. Semple has been a defendant in this matter since its inception and plaintiff has offered no persuasive reason for his delay in requesting leave to amend with regards to this defendant. The Court has also considered

---

has been on his claims for monetary damages. While the Court believes that plaintiff has identified serious flaws in the Department of Correction's provision of dental services, the Court declines to construe plaintiff's Complaint as requesting Court intervention to address these systemic flaws. Rather, plaintiff's Complaint is clearly focused at this point only on monetary remedies. See Doc. #130-2 at 21-22.

the significant prejudice that would result if plaintiff was permitted to proceed against Semple in his individual capacity.

Accordingly, the Court finds that the factors weigh against permitting plaintiff to amend his Complaint to add a claim against Semple in his individual capacity, and the motion to amend is denied as to this request.

**E.   Addition of New Defendant Richard Benoit**

Finally, plaintiff seeks to add as a defendant Richard Benoit, alleged to be CMHC's Director of Dental Services. The Court previously denied plaintiff's motion to add Benoit as a defendant. See Doc. #86 at 6-8. Plaintiff alleges that Benoit became aware of plaintiff's "dental issues as late as April 2015[,]" but did not respond to them until the instant lawsuit was filed. Doc. #130-2 at 19. Plaintiff alleges that Benoit did not adequately ensure the provision of dental care to plaintiff and did not properly supervise his subordinates. See id.

Plaintiff's prior motion to amend his Complaint to add Benoit as a defendant was denied on March 16, 2016, and plaintiff has not presented any additional facts or information that would change the Court's analysis and conclusion that Benoit is not a proper defendant to this action. In fact, plaintiff pleads far fewer facts in relation to Benoit in his proposed Third Amended Complaint than he did in his proposed Second Amended Complaint. Compare Doc. #62-1 at 16 with Doc.

#130-2 at 19-20. Having also considered prejudice to defendants, the Court concludes that the factors weigh against permitting plaintiff to amend his Complaint to add Benoit as a defendant in this matter, and the motion to amend is denied as to this request.

### F.    **Addition of New Factual Allegations**

Plaintiff's proposed Third Amended Complaint sets forth various new factual allegations. See Doc. #130-2 at ¶¶32-35, 37, 47, 50-51, 64-71, 74-76, 101, 132-135, 140-41, 146, 149, 156, 161-163. Plaintiff does not present any specific arguments for their inclusion. In light of the determinations above, the motion to amend is denied as to the addition of these factual allegations.

Additionally, plaintiff seeks to increase the amount of punitive damages he seeks from each individual defendant. See id. at 21-22. Plaintiff is not seeking to add a claim for punitive damages where one previously did not exist; rather, plaintiff seeks additional damages per defendant sued in his or her individual capacity. "Amendments increasing the amount of damages do not ordinarily impose any prejudice on an opposing party since judgments under Rule 54(c) are not bound by the relief prayed for in the pleadings." Poulson v. Beez Bugeez, Inc., No. 84CV7035(CSH), 1986 WL 11457, at *1 (S.D.N.Y. Oct. 3, 1986); see also Fed. R. Civ. P. 54(c) ("Every other final

judgment should grant the relief to which each party is
entitled, even if the party has not demanded that relief in its
pleadings."). Plaintiff is not bound by the dollar amounts
sought in his current Complaint. Accordingly, amendment for this
purpose is unnecessary.

**IV.  CONCLUSION**

As set forth above, plaintiff's Motion for Leave to Amend
his Complaint is **DENIED.**

In light of the above ruling, plaintiff shall file his
response to the defendants' Motion for Summary Judgment **on or
before December 23, 2016.**

This is not a Recommended Ruling. This is an order
regarding case management which is reviewable pursuant to the
"clearly erroneous" statutory standard of review. See 28 U.S.C.
§636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R.
72.2. As such, it is an order of the Court unless reversed or
modified by the District Judge upon motion timely made.

SO ORDERED at New Haven, Connecticut, this 23rd day of
November, 2016.

_____/s/_____

HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE