## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MICHAEL BRAHAM, | : | |
| Plaintiff, | : | CIVIL CASE NO. |
| | : | 3:15–cv–1094 (JCH) |
| v. | : | |
| | : | |
| BRIAN PERELMUTER et al., | : | JULY 28, 2017 |
| Defendants. | : | |

## RULING RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. NO. 137)

## I.    INTRODUCTION

Plaintiff Michael Braham ("Braham") is currently incarcerated at Cheshire

Correctional Institution, in Cheshire, Connecticut ("Cheshire").  Defs.' Local

Rule 56(a)(1) Statement of Material Facts in Supp. of Summ. J. ("Defs.' L.R. 56(a)1")

(Doc. No. 137-2) at 2 ¶ 5; Pl.'s Local Rule 56(a)(2) Statement ("Pl.'s L.R. 56(a)2") (Doc.

No. 157) at 1 ¶ 5.[1]  He initiated this action by filing a pro se Complaint, pursuant to

section 1983 of title 42 of the United States Code, against Dr. Brian Perelmuter ("Dr.

Perelmuter"), Dr. Johnny Wu ("Dr. Wu"), Commissioner Scott Semple ("Commissioner

Semple"), and John Doe.  See Compl. (Doc. No. 1) at 1.  On July 22, 2015, the court

dismissed the claims for money damages against all defendants in their official

capacities and all claims against Dr. Wu and Commissioner Semple in their individual

capacities.  See Initial Review Order (Doc. No. 6) at 5.  The court concluded that the

Eighth Amendment claims against Dr. Perelmuter and defendant Doe in their individual

capacities for money damages and in their official capacities for injunctive relief, as well

---

[1] Braham's Local Rule 56(a)2 Statement appears within the filing at Docket Number 157.  It contains its own internal pagination, but appears at pages 3–11 of the larger filing at Docket Number 157.  When citing to Braham's Local Rule 56(a)2 Statement, the court will use the Statement's separate pagination.

as the claims for injunctive relief against Dr. Wu and Commissioner Semple in their official capacities, would proceed.  See id.

On March 16, 2016, the court granted Braham leave to file an amended complaint to add Health Services Administrator Brown ("Health Administrator Brown") as a defendant in her individual capacity and to add a new claim against Dr. Perelmuter in his individual capacity, regarding his alleged retaliatory refusal to provide treatment to Braham after Braham's teeth were extracted on August 14, 2015.  See Ruling & Order (Doc. No. 86) at 14–15.  The court also informed Braham that, if he sought to proceed against the John/Jane Doe defendant nurse, he must identify the Doe defendant by name on or before April 30, 2016.  See id. at 15.  On March 29, 2016, Braham filed an Amended Complaint against Dr. Perelmuter, Dr. Wu, Commissioner Semple, Health Administrator Brown, and Nurse John/Jane Doe.  See Am. Compl. with Jury Trial Demand (Doc. No. 92) at 1.  On April 18, 2016, Braham filed a Second Amended Complaint that identified the John/Jane Doe defendant as Nurse Sue O'Loughlin[2] ("Nurse O'Loughlin"); the Second Amended Complaint once again also named Dr. Perelmuter, Dr. Wu, Commissioner Semple, and Health Administrator Brown as defendants.  See Second Am. Compl. with Jury Trial Demand ("SAC") (Doc. No. 98) at 1.

In September 2016, Braham moved for leave to file a third amended complaint to add five new defendants, new allegations against Commissioner Semple and Dr. Wu,

_____

[2] Braham spelled Susan O'Loughlin's last name as "O'Laughlin" in the Second Amended Complaint.  See, e.g., Second Am. Compl. with Jury Trial Demand ("SAC") (Doc. No. 98) at 1.  Based on O'Loughlin's answers to Braham's written deposition questions, however, it is evident that the correct spelling is "O'Loughlin."  See Pl.'s Ex Parte Mot. for Leave to Conduct Oral Deps. (Doc. No. 107) at 8–9 (Ex. A).  Thus, the court refers to Nurse O'Loughlin using the correct spelling of her last name, and the Clerk is directed to modify the case caption to reflect this spelling.

and various new factual allegations.  See generally Mot. for Leave to File Am. Compl. with Jury Trial Demand (Doc. No. 130).  On November 23, 2016, the court denied that Motion.  See generally Ruling on Mot. for Leave to File Am. Compl. (Doc. No. 149).[3]

The defendants in this action filed a Motion for Summary Judgment which is currently pending.  See generally Defs.' Mot. for Summ. J. ("Motion") (Doc. No. 137). Defendants filed a Memorandum of Law in Support of their Motion, as well.  See generally Defs.' Mem. of Law in Supp. of Summ. J. ("Mem. in Supp.") (Doc. No. 137-1). Braham has opposed the Motion, see generally Pl.'s Opp'n to Defs.' Mot. for Summ. J. ("Opp'n") (Doc. No. 157),[4] and has filed a Memorandum of Law in Opposition to the Motion, see generally Mem. of Law in Supp. of Pl.'s Opp'n to Defs.' Mot. for Summ. J.[5] For the reasons set forth below, the Motion for Summary Judgment (Doc. No. 137) is **GRANTED IN PART** and **DENIED IN PART**.

## II.    FACTS

Braham has been in the custody of the Commissioner of the Department of Correction since June 25, 1996.  Defs.' L.R. 56(a)1 at 1 ¶ 1; Pl.'s L.R. 56(a)2 at 1 ¶ 1. Braham has been transferred several times among MacDougall-Walker Correctional Institution, Osborn Correctional Institution, and Cheshire.  See Defs.' L.R. 56(a)1 at 1–2 ¶¶ 2–5; Pl.'s L.R. 56(a)2 at 1 ¶¶ 2–5.  From October 31, 2001 to September 10, 2015,

---

[3] Braham filed an Objection to Judge Merriam's Ruling (Doc. No. 149).  See generally Pl.'s Obj. to Magistrate Judge's Ruling & Order (Doc. No. 154).  Judge Merriam's detailed, comprehensive Ruling was not erroneous, much less "clearly erroneous."  See Ruling on Mot. for Leave to File Am. Compl. (Doc. No. 149) at 26 (citing 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2).  As such, Braham's Objection (Doc. No. 154) is overruled.

[4] The Opposition appears at pages 1–2 of the filing at Docket Number 157.

[5] As was the case with his Local Rule 56(a)2 Statement, Braham's Memorandum of Law in Opposition appears within the filing at Docket Number 157.  It contains its own internal pagination, but appears at pages 12–36 of the larger filing at Docket Number 157.  When citing to Braham's

September 23, 2015 to October 16, 2015, and since October 22, 2015, Braham was or

has been housed at Cheshire.  See Defs.' L.R. 56(a)1 at 1–2 ¶¶ 2–5; Pl.'s L.R. 56(a)2

at 1 ¶¶ 2–5.

Dr. Richard P. Benoit ("Dr. Benoit") is the Director of Dental Services for the

Department of Correction.  See Defs.' L.R. 56(a)1 at 2 ¶ 7; Pl.'s L.R. 56(a)2 at 1 ¶ 7.  He

oversees dental staff, dental clinics, and the dental treatment provided to inmates within

the Department of Correction.  Defs.' L.R. 56(a)1 at 2 ¶ 8; Pl.'s L.R. 56(a)2 at 1 ¶ 8.  In

addition, he approves special treatment for dental needs.  Defs.' L.R. 56(a)1 at 2 ¶ 9;

Pl.'s L.R. 56(a)2 at 1 ¶ 9.  Dr. Benoit has been disclosed as an expert for the

defendants.  Defs.' L.R. 56(a)1 at 2 ¶ 11; Pl.'s L.R. 56(a)2 at 1 ¶ 11.

Wisdom teeth are the four molars at the back of one's mouth that may or may not

erupt through an individual's gums.  See Defs.' L.R. 56(a)1 at 2–3 ¶¶ 16–19; Pl.'s L.R.

56(a)2 at 1 ¶¶ 16–19.  Wisdom teeth are numbered 1, 16, 17, and 32 and are located at

the back of an individual's upper and lower jaw, one on each side of the upper jaw and

one on each side of the lower jaw.  See Defs.' L.R. 56(a)1 at 2–3 ¶¶ 16, 27; Pl.'s L.R.

56(a)2 at 1–2 ¶¶ 16, 27.  Tooth number 1 is located on the right side of the mouth at the

back of the upper jaw, tooth number 16 is located on the left side of mouth at the back

of the upper jaw, tooth number 17 is located on the left side of the mouth in the back of

the lower jaw and tooth number 32 is located on the right side of the mouth in the back

of the lower jaw.  Defs.' L.R. 56(a)1 at 3 ¶ 27; Pl.'s L.R. 56(a)2 at 2 ¶ 27.

Wisdom teeth usually erupt through the gums between the ages of seventeen

and twenty-five.  Defs.' L.R. 56(a)1 at 3 ¶ 17; Pl.'s L.R. 56(a)2 at 1 ¶ 17.  If a wisdom

tooth does not fully erupt into its expected position in the jaw, it becomes impacted.

---

Memorandum of Law in Opposition, the court will use its separate pagination.

Defs.' L.R. 56(a)1 at 3 ¶ 19; Pl.'s L.R. 56(a)2 at 1 ¶ 19.  Not all wisdom teeth that

become impacted must be removed.  Defs.' L.R. 56(a)1 at 3 ¶ 21; Pl.'s L.R. 56(a)2 at 2

¶ 21.  Wisdom teeth may also effect other teeth as they erupt.  See Defs.' L.R. 56(a)1

at 3 ¶ 18; Pl.'s L.R. 56(a)2 at 1 ¶ 18.  An individual may experience pain when a wisdom

tooth erupts, Defs.' L.R. 56(a)1 at 3 ¶ 23; Pl.'s L.R. 56(a)2 at 2 ¶ 23, which pain may be

treated with anti-inflammatory or pain medication, Defs.' L.R. 56(a)1 at 3 ¶ 25; Pl.'s L.R.

56(a)2 at 2 ¶ 25.

On January 21, 2014, at Cheshire, Dr. David Sochacki, DDS ("Dr. Sochacki"),

examined Braham's teeth.  See Motion, Ex. 7 (Doc. No. 139) at 51.  Dr. Sochacki noted

generalized sensitivity, mild recession, and mesial angular impactions of the wisdom

teeth in the lower jaw (teeth numbers 17 and 32), and deep pockets on the distal or

back side of the second molars in the lower jaw (teeth numbers 18 and 31).[6]  See id.

He did not observe any swelling, palpable nodes, or mobility of the teeth.  See id.  Dr.

Sochacki diagnosed Braham as suffering from gingival or gum recession and impaction

of the wisdom teeth, numbers 17 and 32.  See id.  He recommended that wisdom teeth

numbers 17 and 32 be removed and referred Braham to an oral surgeon.  See id.

On February 25, 2014, Dr. Peter O'Shea, DDS ("Dr. O'Shea"), examined Braham

regarding the possibility of removing wisdom teeth numbers 17 and 32.  See Defs.' L.R.

56(a)1 at 7 ¶ 60; Pl.'s L.R. 56(a)2 at 3 ¶ 60.  He noted Braham's complaints of episodic

---

[6] Merriam-Webster defines an "impacted" tooth as one that is "wedged between the jawbone and another tooth."  See Impacted, Merriam-Webster, https://www.merriam-webster.com/dictionary/impacted (last visited July 26, 2017).  It defines "mesial" as "of, relating to, or being the surface of a tooth that is next to the tooth in front of it or that is closest to the middle of the front of the jaw."  See Mesial, Merriam-Webster, https://www.merriam-webster.com/dictionary/mesial (last visited July 26, 2017).  Last, it defines "distal" as "of, relating to, or being the surface of a tooth that is next to the tooth behind it or that is farthest from the middle of the front of the jaw."  See Distal, Merriam-Webster, https://www.merriam-webster.com/dictionary/distal (last visited July 26, 2017).

pain on both sides of his jaw and mesioangular impactions and partial eruptions of his wisdom teeth.  See Motion, Ex. 7 at 51.  He observed no swelling or infections in the area of those wisdom teeth and did not prescribe any medication to treat Braham's symptoms.  See id.; Defs.' L.R. 56(a)1 at 7 ¶ 61; Pl.'s L.R. 56(a)2 at 3 ¶ 61.  Dr. O'Shea concluded that Braham's wisdom teeth needed to be extracted, submitting a request to the Utilization Review Committee ("URC") for Braham to undergo oral surgery to remove wisdom teeth numbers 17 and 32 because they were impacted and presented a high risk of caries or tooth decay.  See Motion, Ex. 7 at 51; Defs.' L.R. 56(a)1 at 7 ¶¶ 62–63; Pl.'s L.R. 56(a)2 at 3 ¶¶ 62–63; Opp'n, Ex. A (Doc. No. 157-1)[7] at 2 ¶ 6.  Dr. Benoit approved the request.  See Motion, Ex. 10 (Doc. No. 137-11) at 7 ¶ 62.

At some point between February 25, 2014 and February 4, 2015, Dr. Perelmuter, DMD, replaced Dr. Sochacki as the dentist at Cheshire.  See Defs.' L.R. 56(a)1 at 7–8 ¶¶ 60–65; Pl.'s L.R. 56(a)2 at 3 ¶¶ 60–65.  On February 4, 2015, Dr. Perelmuter summoned Braham to the dental clinic.  See Defs.' L.R. 56(a)1 at 8 ¶ 66; Pl.'s L.R. 56(a)2 at 3 ¶ 66.  He believed that the second molars in Braham's lower jaw, teeth numbers 18 and 31, were both decayed and could not be restored and that wisdom teeth numbers 17 and 32 did not need to be extracted because they did not have any decay.  See Motion, Ex. 7 at 9–10, 51.  He stated that the pockets that had formed at the back of teeth numbers 18 and 31 would resolve once those teeth had been extracted.  See id. at 51.  Dr. Perelmuter withdrew the URC's prior approval for the extraction of wisdom teeth numbers 17 and 32.  Defs.' L.R. 56(a)1 at 8 ¶ 68; Pl.'s

---

[7] Exhibit A to Braham's Opposition appears at page 1–12 of the filing at Docket Number 157-1, and contains internal pagination.  When citing to this exhibit, the court will reference the internal pagination, rather than the CM/ECF-generated numbers at the top of each page.

L.R. 56(a)2 at 3 ¶ 68.

On February 20, 2015, Dr. Perelmuter met with Braham in response to Braham's request for a Health Services Review seeking the extraction of wisdom teeth numbers 17 and 32—instead of teeth numbers 18 and 31—and the restoration of teeth numbers 18 and 31.  See Motion, Ex. 5 (Doc. No. 137-6) at 10–11; Motion, Ex. 7 at 49.  Dr. Perelmuter explained that Correctional Managed Health Care policy did not allow for inmates to undergo molar root canals or to have teeth restored using crowns.  See Defs.' L.R. 56(a)1 at 8 ¶ 70; Pl.'s L.R. 56(a)2 at 3 ¶ 70.  Dr. Perelmuter again opined that removal of teeth numbers 18 and 31 would resolve Braham's dental issues.  See Defs.' L.R. 56(a)1 at 8 ¶ 70; Pl.'s L.R. 56(a)2 at 3 ¶ 70.  Braham refused to consent to the extraction of teeth numbers eighteen and thirty-one.  See Defs.' L.R. 56(a)1 at 8 ¶ 71; Pl.'s L.R. 56(a)2 at 3 ¶ 71; Opp'n, Ex. A at 2 ¶ 10 ("I refused Dr. Perelmuter's ultimatum that I allow him to extract the molars adjacent to my impacted wisdom teeth.").

Dr. Benoit examined Braham's teeth on July 29, 2015.  Defs.' L.R. 56(a)1 at 8 ¶ 72; Pl.'s L.R. 56(a)2 at 3 ¶ 72.  He opined that x-rays showed that wisdom teeth 17 and 32 would not function properly if they fully erupted because of their angle and because the teeth in Braham's lower jaw would not properly fit together with the teeth in his upper jaw when chewing.  See Defs.' L.R. 56(a)1 at 8 ¶ 74; Pl.'s L.R. 56(a)2 at 3 ¶ 74.  In addition, he thought it was questionable as to whether teeth numbers 18 and 31 could be restored, because there was evidence of decay in those teeth.  See Defs.' L.R. 56(a)1 at 8 ¶ 73; Motion, Ex. 7 at 49.[8]  He explained to Braham that he could lose

---

[8] Braham denies paragraph 73 of defendants' Local Rule 56(a)1 Statement, see Pl.'s L.R. 56(a)2

all four teeth if none of those teeth could be saved.  Defs.' L.R. 56(a)1 at 9 ¶ 75; Pl.'s

L.R. 56(a)2 at 4 ¶ 75.

Braham requested that wisdom teeth 17 and 32 be extracted.  See Defs.' L.R.

56(a)1 at 9 ¶ 76; Pl.'s L.R. 56(a)2 at 4 ¶ 76.  Dr. Benoit completed a URC request

seeking extraction of the two wisdom teeth.  See Defs.' L.R. 56(a)1 at 9 ¶ 77; Pl.'s

L.R. 56(a)2 at 4 ¶ 77.  On August 14, 2015, an oral surgeon extracted wisdom teeth 17

and 32.  See Motion, Ex. 7 at 3, 12.  Shortly after the surgery, Braham developed dry

sockets at the sites of the extractions.  See Defs.' L.R. 56(a)1 at 9 ¶ 80; Pl.'s L.R. 56(a)2

at 4 ¶ 80.   Dr. O'Shea treated Braham for this condition.  See Defs.' L.R. 56(a)1 at 9–

10 ¶¶ 80–85; Pl.'s L.R. 56(a)2 at 4 ¶¶ 80–85.

On September 15, 2015, Dr. Stephanie Katz removed the decay from tooth

number 31 and filled it with amalgam, and, on September 17, 2015, Dr. Katz restored

tooth number 18.  See Defs.' L.R. 56(a)1 at 10–11 ¶¶ 90–92, 95; Pl.'s L.R. 56(a)2 at 4

¶¶ 90–92, 95.  On September 18, 2015, Dr. Katz extracted wisdom tooth number 1, with

Braham's consent, because it was impinging on the gingiva below and did not occlude

with the lower teeth on that side.  See Defs.' L.R. 56(a)1 at 11 ¶¶ 91, 96; Pl.'s

L.R. 56(a)2 at 4 ¶¶ 91, 96.

On October 8, 2015, Dr. Perelmuter examined Braham due to his complaints of

swelling around tooth number 31.  See Motion, Ex. 7 at 47.  Dr. Perelmuter observed a

draining infection near tooth 31.  See id.; Defs.' L.R. 56(a)1 at 11 ¶ 98.[9]  He concluded

---

at 3 ¶ 73, exclusively on the grounds that this paragraph conflicts with paragraph 93 of the Local Rule
56(a)1 Statement, see Opp'n, Ex. A at 2 ¶ 10.  Contrary to Braham's suggestion, the two paragraphs are
not in conflict.  Compare Defs.' L.R. 56(a)1 at 8 ¶ 73 (suggesting prognosis of teeth was "questionable,"
not that restoration was impossible), with Defs.' L.R. 56(a)1 at 10 ¶ 90 (stating that Dr. Katz determined
these teeth could, in fact, be restored).

[9] Braham claims paragraph 98 of defendants' Local Rule 56(a)1 Statement is in conflict with

that the tooth was non-restorable and should be extracted.  See Defs.' L.R. 56(a)1 at 11 ¶ 98.  After consulting with Dr. Benoit, Dr. Perelmuter prescribed an antibiotic to treat the infection in tooth number 31.  See Motion, Ex. 7 at 47.  Dr. Perelmuter examined Braham again on October 13, 2015.  See Defs.' L.R. 56(a)1 at 12 ¶ 100; Pl.'s L.R. 56(a)2 at 4 ¶ 100.  He observed swelling around teeth numbers 18 and 31 and recommended extraction of both teeth.  See Defs.' L.R. 56(a)1 at 12 ¶ 100; Pl.'s L.R. 56(a)2 at 4 ¶ 100; Motion, Ex. 7 at 45.  In response to this recommendation, Braham sought to be examined at University of Connecticut Health Center.  See Motion, Ex. 7 at 45.

On October 19, 2015, Braham was transferred to Osborn Correctional Institution to be examined by Dr. Katz.  See Defs.' L.R. 56(a)1 at 12 ¶ 102; Pl.'s L.R. 56(a)2 at 5 ¶ 102.  After examining Braham, Dr. Katz noted that teeth numbers 18 and 31 were unremarkable, but that excess scar tissue had formed in the sockets of wisdom teeth 17 and 32 and was causing swelling in the area of teeth numbers 18 and 31.  See Defs.' L.R. 56(a)1 at 12 ¶ 103; Pl.'s L.R. 56(a)2 at 5 ¶ 103.  She also observed a slight overhang of the filling in tooth number 31.  See Defs.' L.R. 56(a)1 at 12 ¶ 104; Pl.'s L.R. 56(a)2 at 5 ¶ 104.  Dr. Katz removed the scar tissue and smoothed the filling in tooth number 31 so that it would not be in contact with the gum.  See Defs.' L.R. 56(a)1 at 12 ¶ 105; Pl.'s L.R. 56(a)2 at 5 ¶ 105.  Dr. Katz examined Braham again on October 20, 2015 and noted that the area was healing well and no infection was present.  See Defs.' L.R. 56(a)1 at 12 ¶ 106; Pl.'s L.R. 56(a)2 at 5 ¶ 106.

---

another paragraph of that Statement, paragraph 103.  See Pl.'s L.R. 56(a)2 at 4 ¶ 98; Opp'n, Ex. A at 2 ¶ 14.  These paragraphs are not in conflict, as paragraph 98 states Dr. Perelmuter's view as to the condition of Braham's mouth on October 8, 2015, while paragraph 103 states Dr. Katz's view on October 19, 2015.

As of February 10, 2016, Dr. Bruce Lichtenstein ("Dr. Lichtenstein") was the dentist assigned to Cheshire.  See Defs.' L.R. 56(a)1 at 12–13 ¶¶ 107–08; Pl.'s L.R. 56(a)2 at 5 ¶¶ 107–08.  He examined Braham and recommended the replacement of the filling in tooth number 31.  See Defs.' L.R. 56(a)1 at 13 ¶ 108; Pl.'s L.R. 56(a)2 at 5 ¶ 108.  On May 18, 2016, Dr. Lichtenstein replaced the filling in tooth number 31.  See Defs.' L.R. 56(a)1 at 13 ¶ 110; Pl.'s L.R. 56(a)2 at 5 ¶ 110.  That filing subsequently broke, and Dr. Liechtenstein replaced it on May 23, 2016.  See Defs.' L.R. 56(a)1 at 13 ¶ 111; Pl.'s L.R. 56(a)2 at 5 ¶ 111.

## III.    LEGAL STANDARDS

A motion for summary judgment may be granted only where there are no issues of material fact in genuine dispute, and the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(a); Redd v. N.Y. Div. of Parole, 678 F.3d 166, 173–74 (2d Cir. 2012).  The moving party may satisfy his or her burden "by showing— that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks and citations omitted).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits and the moving party "demonstrates the absence of a genuine issue of material fact," the nonmoving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation."  Robinson v. Concentra Health Servs., Inc., 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted).  Thus, the party opposing the motion for

summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." Id.

In reviewing the record, the court must "construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." Gary Friedrich Enters., LLC v. Marvel Characters, Inc., 716 F.3d 302, 312 (2d Cir. 2013) (citation omitted). The Second Circuit has articulated the job of the district court as follows:

> The function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists. . . . Summary judgment is inappropriate when the admissible materials in the record make it arguable that the claim has merit, for the court in considering such a motion must disregard all evidence favorable to the moving party that the jury is not required to believe.

Rogoz v. City of Hartford, 796 F.3d 236, 245–46 (2d Cir. 2015) (internal quotation marks, citations, and emphasis omitted).

Where one party is proceeding pro se,[10] the court interprets that party's papers liberally "to raise the strongest arguments that they suggest." Willey v. Kirkpatrick, 801 F.3d 51, 62 (2d Cir. 2015) (internal quotation marks and citation omitted). Despite this liberal interpretation, however, "[u]nsupported allegations do not create a material issue of fact" and cannot overcome a properly-supported motion for summary judgment. See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (citation omitted).

## IV.   DISCUSSION

The defendants assert seven arguments in support of their Motion. They contend that: (1) the request for declaratory relief is barred by the Eleventh Amendment,

---

[10] Though the court has ordered that pro bono counsel be appointed for Braham, see Order (Doc. No. 162), he does not currently have counsel. Moreover, all of Braham's filings regarding the pending

see generally Mem. in Supp. at 10–11; (2) the claims against Nurse O'Loughlin are subject to dismissal pursuant to Federal Rule of Civil Procedure 4(m), see generally id. at 18–19; (3) Braham failed to exhaust his administrative remedies as to the claim against Health Administrator Brown and the retaliation claim against Dr. Perelmuter, see generally id. at 11–17; (4) Braham has failed to adduce facts showing the personal involvement of Health Administrator Brown in the alleged failure to provide Braham with dental care, in violation of the Eighth Amendment, see generally id. at 19–21; (5) Braham's retaliation claim against Dr. Perelemuter fails, see generally id. at 16–18; (6) Braham fails to adduce facts that support his claim that Health Administrator Brown or Dr. Perelmuter violated his Eighth Amendment rights, see generally id. at 22–26; and (7) defendants are entitled to qualified immunity, see id. at 26–27.

A.    Declaratory Relief

Braham seeks money damages from Dr. Perelmuter, Nurse O'Loughlin, and Health Administrator Brown in their individual capacities, and a declaratory judgment against those defendants, as well as Dr. Wu and Commissioner Semple.  See SAC at 1, 16.  Dr. Wu and Commissioner Semple argue that the request for declaratory relief is barred by the Eleventh Amendment.  See Mem. in Supp. at 10–11.  Braham has not responded to this argument.

The Second Amended Complaint includes a multi-part request for declaratory relief.  Braham asks the court to declare that: (1) the failure of Dr. Perelmuter, Nurse O'Loughlin, and Health Administrator Brown to provide for the surgical extraction of his impacted wisdom teeth violated the Eighth Amendment; (2) the failure of Dr. Perelmuter, Nurse O'Loughlin, and Health Administrator Brown to restore his second

---

Motion were submitted pro se.

lower molars violated the Eighth Amendment; (3) the general failure of Dr. Perelmuter, Nurse O'Loughlin, and Health Administrator Brown to provide him with necessary dental services violated the Eighth Amendment; and (4) the conduct of Dr. Perelmuter in refusing to meet his post-operative dental needs in August and October 2015 constituted retaliation in violation of the First Amendment.  See SAC at 16. Commissioner Semple and Dr. Wu contend that the request for declaratory relief should be dismissed as barred by the Eleventh Amendment because it is retrospective instead of prospective.  See generally Mem. in Supp. at 10–11.  Braham makes clear that he has sued Dr. Perelmuter, Nurse O'Loughlin, and Health Services Administrator Brown in their individual capacities, and Dr. Wu and Commissioner Semple in their official capacities.  See SAC at 1–2.

The purpose of the Declaratory Judgment Act is to allow parties to resolve claims before either side suffers great harm.  See In re Combustion Equip. Assocs., Inc., 838 F.2d 35, 37 (2d Cir. 1988).  In Ex parte Young, 209 U.S. 123 (1908), the Supreme Court held that an exception to the Eleventh Amendment's grant of sovereign immunity from suit existed to permit a plaintiff to sue a state official acting in his or her official capacity for prospective injunctive relief for continuing violations of federal law.  Id. at 155–56.  The exception to Eleventh Amendment immunity, however, does not apply to claims against state officials seeking declaratory or injunctive relief for prior violations of federal law.  See Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993) (noting that exception to Eleventh Amendment immunity set out in Ex parte Young "does not permit judgments against state officers declaring that they violated federal law in the past"); Green v. Mansour, 474 U.S. 64, 68 (1985) ("We

have refused to extend the reasoning of Young . . . to claims for retrospective relief.")
(citations omitted); Ward v. Thomas, 207 F.3d 114, 119–20 (2d Cir. 2000) (holding that
Eleventh Amendment bars declaratory judgment that Connecticut officials violated
federal law in past).

Braham's request for a declaration that the defendants violated his First and
Eighth Amendment rights in 2014 and 2015 cannot be properly characterized as
"prospective" because Braham does not allege how such relief would remedy a future
constitutional violation by the defendants.  Thus, Braham's request for declaratory relief
does not meet the exception to Eleventh Amendment immunity set forth in Ex parte
Young.  Absent any request for prospective relief to remedy ongoing violations of
federal law, a declaration that the defendants violated Braham's constitutional rights in
the past is barred by the Eleventh Amendment.  See Green, 474 U.S. at 71–73 (holding
that, if there is no allegation of an ongoing violation of federal law, Eleventh Amendment
prevents federal courts from providing notice relief or declaratory judgment that state
officials violated federal law in past); Jackson v. Battaglia, 63 F. Supp. 3d 214, 220–21
(N.D.N.Y. 2014) (dismissing requests for relief seeking an "injunction precluding any
unlawful conduct alleged within this complaint at any time in the future and a declaration
that defendants have violated federal law," because they "cannot be properly
characterized as prospective" requests for relief) (internal quotation marks omitted).

Moreover, in addition to the Eleventh Amendment bar to his claim for declaratory
relief, Braham clearly lacks Article III standing to pursue a declaratory judgment against
any of the defendants.  Though this issue was not briefed by the parties, federal courts
retain an independent obligation to ensure that standing exists.  See Summers v. Earth

14

Island Inst., 555 U.S. 488, 499 (2009) (citing Bender v. Williamsport Area Sch. Dist.,

475 U.S. 534, 541 (1986)).  It is well established that a plaintiff must have constitutional

standing for each form of relief he seeks.  See DaimlerChrysler Corp. v. Cuno, 547 U.S.

332, 352 (2006) (citing Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,

528 U.S. 167, 185 (2000)).  The "irreducible constitutional minimum" of Article III

standing is: "(1) an injury in fact, (2) a sufficient causal connection between the injury

and the conduct complained of, and (3) a likel[ihood] that the injury will be redressed by

a favorable decision."  See Montesa v. Schwartz, 836 F.3d 176, 195 (2d Cir. 2016)

(internal quotation marks and citations omitted).

      Here, where Braham seeks a declaratory judgment, he "cannot rely on past injury

to satisfy the injury requirement but must show a likelihood that he . . . will be injured in

the future."  Dashawn E. by Charlotte E. v. Safir, 156 F.3d 340, 344 (2d Cir. 1998)

(citing City of Los Angeles v. Lyons, 461 U.S. 95, 105–06 (1983)).  Braham's claims are

grounded in the alleged, past violations of his rights.  See SAC at 16.  He has not

suggested that he is likely to suffer a future injury, as his allegations of improper

conduct are entirely phrased in the tense.  See generally SAC.  His claim for declaratory

relief fails, both because he has not alleged or adduced evidence that future injury is

likely and because a declaratory judgment could not redress the past harms he alleges

in his SAC and describes in his Opposition, see Stevens v. Malloy, No. 3:15–cv–

934 (JCH), 2016 WL 6440112, at *6 (D. Conn. Oct. 28, 2016) ("[P]rospective [relief]

could not possibly redress a past constitutional violation; rather, . . . money damages

are the proper remedy for past violations of [plaintiff's] rights.").

In the absence of any material facts in dispute regarding the request for declaratory relief, the defendants are entitled to summary judgment as a matter of law. The Motion for Summary Judgment is granted as to the request for declaratory relief. There are no claims remaining against Dr. Wu and Commissioner Semple.

B.    Service on Nurse O'Loughlin

Nurse O'Loughlin argues that the claims against her should be dismissed because she was not served in a timely manner.  See Mem. in Supp. at 18–19.  The record reflects that Braham identified Nurse Susan O'Loughlin as Nurse Doe in the Second Amended Complaint filed on April 18, 2016.  See SAC at 2 ¶ 6.

Braham paid the court's filing fee when he commenced this action.  Despite payment of the filing fee, but see Fed. R. Civ. P. 4(c)(3) (requiring the court to order service by a United States marshal if plaintiff proceeds in forma pauperis), on July 22, 2015, the court directed the Clerk to make arrangements to serve the Complaint and the Initial Review Order on the defendants in their individual and official capacities, see Initial Review Order at 5–7.

When Braham filed the Second Amended Complaint, the court did not issue an order directing Braham—or the Clerk of Court—to serve it on the newly identified defendant.  Because it was unclear that Braham was aware that he was responsible for serving the Second Amended Complaint, on October 19, 2016, the court issued an Order directing the Clerk to mail a waiver of service of summons to Nurse O'Loughlin. See Order (Doc. No. 147) at 1–2.  The Clerk mailed a waiver to Nurse O'Loughlin on October 21, 2016, and she signed the waiver on December 2, 2016.  The Clerk

docketed the waiver on December 5, 2016.  See Waiver of Service of Summons (Doc. No. 152).

Because the court did not issue an order directing Braham to serve Nurse O'Loughlin with a copy of the Second Amended Complaint at the time it was filed, and Braham may have been under the impression that he was not responsible for serving the Second Amended Complaint on Nurse O'Loughlin, the court does not attribute the delay in service of the Second Amended Complaint to the conduct of Braham.  The court thus grants, nunc pro tunc, an additional five months to serve Nurse O'Loughlin. Accordingly, the Motion for Summary Judgment is denied, insofar as it argues that the claims against Nurse O'Loughlin are subject to dismissal pursuant to Federal Rule of Civil Procedure 4(m).

C.    Exhaustion of Administrative Remedies

The defendants argue that Braham failed to exhaust his administrative remedies as to the Eighth Amendment claims against Health Administrator Brown, relating to her deliberate indifference to his dental needs, and the First Amendment retaliation claim against Dr. Perelmuter relating to his denial of dental treatment after the restoration of teeth numbers 18 and 31 and the extractions of teeth numbers 17 and 32.  See Mem. in Supp. at 11.  Braham argues that he exhausted his available remedies regarding both claims.  See generally Mem. in Opp'n at 4–15.

The Prison Litigation Reform Act ("PLRA") requires inmates to exhaust "such administrative remedies as are available" before bringing any "action . . . with respect to prison conditions . . . ."  42 U.S.C. § 1997e(a).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances

or particular episodes, and whether they allege excessive force or some other wrong,"
Porter v. Nussle, 534 U.S. 516, 532 (2002), regardless of whether the inmate may
obtain the specific relief he desires through the administrative processes provided, see
Booth v. Churner, 532 U.S. 731, 741 & n.6 (2001).

Furthermore, the PLRA requires "proper exhaustion," see Woodford v. Ngo, 548
U.S. 81, 93 (2006), including "procedural rules" defined by the particular prison
grievance system, see id. at 95. Thus, "untimely or otherwise procedurally defective
attempts to secure administrative remedies do not satisfy the PLRA's exhaustion
requirement." Ruggiero v. Cty. of Orange, 467 F.3d 170, 176 (2d Cir. 2006) (discussing
Woodford, 548 U.S. at 83–84).

In Ross v. Blake, --- U.S. ---, 136 S. Ct. 1850 (2016), the Supreme Court rejected
lower courts' adoption of a judicially-created "special circumstances" exception to the
exhaustion requirement. See 136 S. Ct. at 1857, 1862 ("Courts may not engraft an
unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement.").
The Court concluded that the PLRA contains a single, "textual exception": that an
inmate must only exhaust such remedies as are "available" to him or her. See id. at
1858. There are no exceptions to an inmate's obligation to exhaust available remedies,
irrespective of any "special circumstances." See id. at 1856. However, in Ross, the
Supreme Court identified three circumstances in which "an administrative remedy,
although officially on the books, is not capable of use to obtain relief," namely: (1) when
a procedure "operates as a simple dead end—with officers unable or consistently
unwilling to provide any relief to aggrieved inmates"; (2) when "an administrative
scheme [is] so opaque that it becomes, practically speaking, incapable of use," because

"no ordinary prisoner can discern or navigate it"; or (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1859–60.

"Failure to exhaust administrative remedies is an affirmative defense under the PLRA . . . ." Williams v. Correction Officer Priatno, 829 F.3d 118, 122 (2d Cir. 2016) (citing, inter alia, Jones v. Bock, 549 U.S. 199, 216 (2007)). "The defendants have the burden of showing that there is no genuine issue of material fact as to exhaustion that would preclude summary judgment." Johnston v. Maha, 460 F. App'x 11, 15 (2d Cir. 2012) (summary order).

Matters relating to the provision of health services to inmates are grievable and are addressed in Administrative Directive 8.9.[11] See generally Motion, Ex. 2 ("Directive 8.9") (Doc. No. 137-3). There are two types of Health Services Review, (1) Diagnosis and Treatment and (2) Review of an Administrative Issue. See id. at 2–3 ¶ 9(A)–(B). Pursuant to Directive 8.9, an inmate seeking either type of review must seek informal resolution prior to filing a formal request for a Health Services Review. See id. at 3 ¶ 10. If an inmate is not happy with the informal resolution of his or her issue, he or she may file an Inmate Administrative Remedy Form seeking a Health Services Review of a medical decision regarding diagnosis or treatment, a review of a practice, procedure, policy, or administrative provision, or the allegedly improper conduct of a health services provider. See id. at 3–4 ¶¶ 11–12.

---

[11] Defendants also cite to Administrative Directive 9.6 ("Directive 9.6"), but do not assert how or if it is relevant in the cases of health services complaints. See Mem. in Supp. at 14–15. By the terms of Directive 9.6, grievances related to the delivery of health care services are governed by Directive 8.9. See Motion, Ex. 3 (Doc. No. 137-4) at 2 ¶ 4(L). Absent any specific suggestion by the defendants that Directive 9.6 governs here, the court will focus its attention on the more obviously applicable Directive 8.9.

If the inmate seeks review of a diagnosis or treatment, and the issue cannot be resolved informally, the Health Services Review Coordinator is required to schedule a Health Services Review Appointment with a physician, dentist, or other medical provider as soon as possible.  See id. at 3 ¶ 11(A).  If, after the appointment, the physician or dentist concludes that the existing diagnosis or treatment was appropriate, the inmate is deemed to have exhausted his health services review remedy.  See id.

If the inmate seeks review of procedures, practices, policies, or improper conduct of a health services provider and cannot resolve the matter informally, the Health Services Coordinator is required to evaluate, investigate, and decide the matter within thirty days.  See id. at 4 ¶ 12(A).  If the inmate is not satisfied with the response to his or her request for review, he or she may appeal the decision within ten business days of receiving the decision.  See id. at 4 ¶ 12(B).  The health services provider or the designated facility health services director must decide that appeal "within fifteen business days of receiving" it.  See id. at 4 ¶ 12(C).  If the issue being raised "relates to a health services policy of the Department, the inmate may appeal to the DOC Director of Health Services within ten (10) business days of" receiving the decision from the health services provider or designated facility health services director.  See id. at 4 ¶ 12(D).

The court concludes that administrative remedies set forth in Directive 8.9 were "officially on the books," see Ross, 136 S. Ct. at 1859, at the time of the incidents described in the Second Amended Complaint.  Braham's claims regarding the conduct of health service providers Brown and Perelmuter falls within the universe of matters that were grievable under the Inmate Administrative Remedies Procedures.  Thus,

administrative remedies were available to Braham regarding his Eighth Amendment and First Amendment retaliation claims, and he was on notice of the inmate grievance procedures in 2015, see Motion, Ex. 4 ("Braham Dep. Tr.") (Doc. No. 137-5) at 19:4–19:13, 23:3–23:14, 36:19–38:6, 57:10–57:21, 61:9–61:15.  Because the defendants raised the failure to exhaust administrative remedies as an affirmative defense in their answer to the Second Amended Complaint, see Defs. Perelmuter, Brown, Wu & Semple Answer & Affirmative Defense to Pl.'s Second Am. Compl. (Doc. No. 103) at 11, they have not waived the defense.

Next, the court turns to defendants' arguments that Braham failed to exhaust his remedies as to his claim against Health Administrator Brown or his retaliation claim against Dr. Perelmuter.

      1.     Eighth Amendment Claim against Health Administrator Brown

The parties do not dispute that Braham completed an informal Inmate Request Form on March 8, 2015, that he addressed to Health Services Administrator Brown regarding the conduct of Dr. Perelmuter and seeking her assistance in securing dental treatment.  See Motion, Ex. 5 (Doc. No. 137-6) at 12–13.  Because Administrator Brown did not respond to his Inmate Request, on April 5, 2015, Braham completed an Inmate Administrative Remedy Form and checked off the box indicating that he sought a Health Services Review regarding his dental claim against Health Services Administrator Brown.  See id.  On April 10, 2015, a Health Services Review Coordinator returned the request for a Health Service Review without disposition because Braham had failed to raise his request for dental treatment during sick call.  See id. at 13.  She also checked off the box that indicated that he had exhausted his remedies under the Department of

Correction's directives.  See id.  Braham does not appear to have attempted to appeal or refile the request for a Health Services Review, nor does he represent that he did so.

The Health Service Review submitted by Braham sought review of an administrative decision or conduct of a health services provider—Health Services Administrator Brown—pursuant to Directive 8.9, paragraph 9(B).  As indicated above, in response to a request for review of an administrative practice, procedure or conduct of an employee, the Health Services Review Coordinator is to evaluate, investigate, and decide the issue within thirty days.  See Directive 8.9 at 5 ¶ 12(A).  Furthermore, "[t]he outcome [of the review] shall be indicated by one of the following dispositions: Rejected, Denied, Compromised, Upheld or Withdrawn."  See id.  Informing Braham that he must first resolve his inmate request regarding the conduct of a health services provider through sick call does not appear to be an appropriate response, per the Department of Correction's own directive, to the type of review sought by Braham.  Furthermore, the Health Services Review Coordinator checked off the box indicating that Braham had exhausted his remedies, see Motion, Ex. 5 at 13, which likely suggested to Braham that he need not take any further steps to appeal or resubmit his grievance.

The court concludes that defendants have not shown that there is no genuine issue of material fact as to exhaustion of Braham's remedies, see Johnston v. Maha, 460 F. App'x 11, 15 (2d Cir. 2012) (summary order), regarding his claim against Health Administrator Brown.  In view of the confusing and seemingly improper response by the Health Services Review Coordinator to Braham's request for a Health Services Review, it may well be that the remedies outlined in Directive 8.9 were not "available to him, because it was a "dead end," in that the reviewer failed to properly respond to the type

22

of review requested.  See Ross, 136 S. Ct. at 1859 (offering as example of unavailable

administrative remedy one that "operates as a simple dead end—with officers unable or

consistently unwilling to provide any relief to aggrieved inmates").  Furthermore, based

on the fact that the Health Services Review Coordinator checked off the box indicating

that Braham had exhausted his available remedies, there is an issue of fact as to

whether Braham was justified in believing that he had taken all the necessary steps to

exhaust his remedies as to his claim against Health Administrator Brown.  Accordingly,

Health Administrator Brown has failed to demonstrate an absence of material fact with

regard to the exhaustion of remedies related to the Eighth Amendment claims against

her.  The Motion for Summary Judgment is denied on this ground, as to Health

Administrator Brown.

        2.     First Amendment Claim against Dr. Perelmuter

      Braham claims, in part, that in August and October 2015—after the extraction of

his wisdom teeth and restoration of teeth numbers 18 and 31—Dr. Perelmuter refused

to provide him with dental treatment for complications related to those prior treatments

in retaliation for Braham's filing of this lawsuit and a motion seeking injunctive relief.

See SAC at 10–12 ¶¶ 88–114.  Dr. Perelmuter argues that Braham has failed to

exhaust his administrative remedies as to this retaliation claim.  See Mem. in Supp.

at 15–16.

      Braham does not allege that he filed any grievances regarding the conduct of Dr.

Perelmuter after he underwent the restorations of teeth numbers 18 and 31 and the

extractions of teeth numbers 17 and 32.  Dr. Perelmuter has presented evidence of the

grievances filed by Braham from May 2014 to December 2015.  See generally Motion,

Ex. 5 (including Affidavit of Health Services Review Coordinator Nicole Karabetsos and Copies of Administrative Remedies Forms filed by Braham).  These documents reflect the fact that Braham did not file any inmate requests or request for health services reviews, as required by Directive 8.9, regarding Dr. Perelmuter's conduct after the extraction of his wisdom teeth and restoration of his second molars in August and September 2015.

The court concludes that Braham has presented no evidence to support a finding that the Department of Correction's grievance procedures were unavailable to him with regard to his retaliation claim.  There are no facts or evidence to suggest that Braham did not have access to or could not take advantage of the Department of Correction's grievance process to fully exhaust his claim.  Because Braham has not demonstrated that the grievance process was unavailable to him with regard to this retaliation claim against Dr. Perelmuter, he is not excused from the PLRA's administrative exhaustion requirement.

Braham's reliance on the Second Circuit's decision in Johnson v. Killian, 680 F.3d 234 (2d Cir. 2012) (per curiam), is unavailing.  To the extent Johnson is still good law, after the Supreme Court's clarification that prisoners are absolutely required to exhaust available remedies before bringing suit, see Ross at 1856, this case is clearly distinguishable.  Braham claims that his "initial grievance identifies a specific and continuing complaint—Perelmuter's refusal to extract his wisdom teeth and provide normal post[-]extraction treatment."  Mem. in Opp'n at 7 (emphasis added).  The latter part of this sentence is clearly false: his complaints were directed solely at the extraction of certain teeth and the restoration of others, without any mention of "post extraction

treatment." See Motion, Ex. 5 at 11 ("I think that the 3rd molars should be extracted and that the 2nd molars should be restored via root canal and crowning."); id. at 13 ("I think the dental department should extract the first molars of my bottom row of teeth and repair the second molars on my bottom row of teeth ASAP.").  Here, Dr. Perelmuter's alleged post-extraction conduct was not included in the grievances that Braham actually filed, as part of "a specific and continuing complaint . . . ."  See Johnson, 680 F.3d at 239.

Dr. Perelmuter has met his burden of demonstrating that there are no issues of material fact in dispute with regard to the exhaustion of remedies related to the retaliation claim and that he is entitled to judgment as a matter of law.  The Motion for Summary Judgment is granted as to the retaliation claim against Dr. Perelmuter.[12]

D.    Personal Involvement of Health Administrator Brown

Health Administrator Brown argues that claims against her must be dismissed, because there is insufficient evidence of her personal involvement in the alleged deliberate indifference to his dental needs.  See Mem. in Supp. at 21.  Braham claims that he made Health Administrator Brown aware of his dental needs and Dr. Perelmuter's denial of treatment for those needs in early March 2015 and that Brown failed to take any action to intervene and remedy the situation.  See Mem. in Opp'n at 16–17.

To recover money damages under section 1983 of title 42 of the United States Code, Braham must show that Health Administrator Brown was personally involved in

_____

[12] Because the court has granted the Motion for Summary Judgment on the ground that Braham did not exhaust his remedies regarding the retaliation claim against Dr. Perelmuter prior to filing the Second Amended Complaint, the court need not reach defendants' other arguments for summary

any constitutional violations.  See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").  "A prison official cannot be personally liable under § 1983 on the basis of respondeat superior or simply because he is atop the prison hierarchy." Lewis v. Cunningham, 483 F. App'x 617, 618–19 (2d Cir. 2012) (summary order) (citing Colon v. Coughlin, 58 F.3d 865, 874 (2d Cir. 1995)).

For many years, "[i]t was well settled in this circuit that there were five ways to demonstrate the personal involvement of a supervisory defendant," Dupas v. Arnone, No. 3:12–cv–1215 (AVC), 2012 WL 4857565, at *2 (D. Conn. Oct. 10, 2012), namely that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citation omitted).  In addition, plaintiffs were required to demonstrate an affirmative causal link between the action or inaction of the supervisory official and their alleged injuries.  See Poe v. Leonard, 282 F.3d 123, 140 (2d Cir. 2002).

However, in Ashcroft v. Iqbal, the Supreme Court discussed supervisory liability, stating that a supervisor can be held liable only "through the official's own individual actions."  See 556 U.S. at 676.  Although this decision arguably casts doubt on the

---

judgment on this First Amendment retaliation claim, see generally Mem. in Supp. at 16–18.

continued viability of some of the categories for supervisory liability set forth in <u>Colon</u>, the Second Circuit has not revisited the <u>Colon</u> criteria since <u>Iqbal</u>.  <u>See</u> <u>Raspardo v. Carlone</u>, 770 F.3d 97, 117 (2d Cir. 2014) ("We have not yet determined the contours of the supervisory liability test, including the gross negligence prong, after <u>Iqbal</u>." (citations omitted)); <u>Grullon v. City of New Haven</u>, 720 F.3d 133, 139 (2d Cir. 2013) (suggesting that decision in <u>Iqbal</u> "may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations," but finding it unnecessary to reach impact of <u>Iqbal</u> on personal involvement requirements in <u>Colon</u>); <u>Shaw v. Prindle,</u> 661 F. App'x 16, 18 & n.2 (2d Cir. 2016) (summary order) (same). Because it is unclear whether, or to what extent, <u>Iqbal</u> overrules or limits <u>Colon</u>, this court will apply the categories for supervisory liability set forth in <u>Colon</u>, as have several other courts in this District.  <u>See, e.g.</u>, <u>Boyd v. Arnone</u>, 48 F. Supp. 3d 210, 218 (D. Conn. 2014); <u>Friedland v. Otero</u>, No. 3:11–cv–606 (JBA), 2014 WL 1247992, at *10 (D. Conn. Mar. 25, 2014).

Braham contends that the court should assume that Health Administrator Brown received his inmate request and request for a Health Services Review because he addressed those requests to her and placed them in either a correspondence, administrative remedies, or health services mailbox located in his housing unit.  <u>See</u> Mem. in Opp'n at 16 (stating that he "sent Brown an Inmate Request form").  At the pleading stage, a plaintiff may rely on an allegation that he sent a letter or request to a defendant "at an appropriate address and by appropriate means" to support his claim that the defendant became aware of the contents of the letter regarding unconstitutional conditions of confinement and failed to take action to remedy the conditions.  <u>Grullon</u>,

720 F.3d at 141.  Once the defendant moves for summary judgment, however, a plaintiff must provide evidence to support his claim that the defendant in fact received the letter, had actual knowledge of the risk of harm or unconstitutional conditions, and failed to make any effort to remedy the conditions or to prevent or protect the plaintiff from the harm.  See Farmer v. Brennan, 511 U.S. 825, 836–37 (1994) (holding, with regard to subjective prong of Eighth Amendment claim, that charged official may be found liable only when he "knows of and disregards an excessive risk to inmate health or safety"); Salahuddin v. Goord, 467 F.3d 263, 279–80 (2d Cir. 2006) (requiring, in context of subjective prong of deliberate indifference to medical needs claim, that "official act or fail to act while actually aware of a substantial risk that serious inmate harm will result").

Health Administrator Brown stated under oath in her response to Braham's deposition by written questions that she does not remember ever receiving or viewing the Inmate Request prepared by Braham on March 8, 2015, and there is no evidence of the Inmate Request in her files.  See Motion, Ex. 9 (Doc. No. 137-10) at 4 ¶ 34.  In addition, she stated that she was not involved in the processing of the Health Services Review submitted by Braham on April 5, 2015.  See id. at 4 ¶¶ 31–32.  Because there is no evidence to contravene Health Administrator Brown's sworn statements that she did not receive or review the inmate request or process the Health Services Review, there is no evidence that she was aware of Braham's dental concerns or need for dental treatment.  Braham has not presented any evidence to suggest that Health Administrator Brown received the Inmate Request or the grievance.  Rather, he still relies solely on his allegation that he "sent" his complaint to her, which allegation is insufficient to survive a Motion for Summary Judgment.

In the absence of admissible evidence that contradicts Health Administrator Brown's sworn testimony, the court concludes that there is an absence of material facts in dispute regarding her personal involvement (or lack thereof) in the alleged denial of dental treatment to Braham.  Accordingly, the Motion for Summary Judgment is granted as to the Eighth Amendment claims against Health Administrator Brown in her individual capacity, because she lacked personal involvement in the alleged failure to provide dental treatment.[13]

E.    Deliberate Indifference to Medical Needs by Dr. Perelmuter

Dr. Perelmuter argues that he was not deliberately indifferent to Braham's dental needs.  See Mem. in Supp. at 22.  Braham contends that he has submitted sufficient evidence to create a genuine dispute of material fact with regard to the conduct of Dr. Perelmuter and whether it constituted deliberate indifference to his serious dental needs.  See Mem. in Opp'n at 19–24.

The Supreme Court has held that deliberate indifference by prison officials to a prisoner's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment.  See Estelle v. Gamble, 429 U.S. 97, 104 (1976).  The Second Circuit has applied the deliberate indifference standard set forth in Estelle to claims of denials or delay in the treatment of dental needs.  See Harrison v. Barkley, 219 F.3d 132, 136–37 (2d Cir. 2000) (applying Estelle to claim of untreated tooth cavity); Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (applying same standard, where plaintiff claimed prison dentist failed to properly treat severe tooth

---

[13] Because the court grants Health Administrator Brown's Motion for Summary Judgment on the grounds that there is no evidence she was sufficiently involved in Braham's dental care, the court need not address her argument that she was not deliberately indifferent to Braham's dental needs, see Mem. in

decay). There are subjective and objective components of this Eighth Amendment claim. See Salahuddin, 467 F.3d at 279–80.

First, as to the objective prong of the test, the alleged deprivation of medical care must be "sufficiently serious." See id. at 279 (quoting Farmer, 511 U.S. at 834)). A "sufficiently serious" deprivation exists if the plaintiff suffers from an urgent medical condition that is degenerative or is capable of causing death or extreme or chronic pain. See Brock v. Wright, 315 F.3d 158, 162–63 (2d Cir. 2003) (citation omitted); Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996) (citations omitted). A medical or dental condition may not initially be serious, but may become serious because it is degenerative and, if left untreated or neglected for a long period of time, will "result in further significant injury or the unnecessary and wanton infliction of pain." Harrison, 219 F.3d at 136–37 (citations omitted). The Second Circuit has identified several factors that are "highly relevant" to the question of whether a medical condition is sufficiently serious, including: "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Chance, 143 F.3d at 702 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059–60 (9th Cir. 1992)).

As for the subjective prong, the defendant prison official must have "act[ed] with a sufficiently culpable state of mind." Id. (quoting Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994)). Thus, the defendant must have been "actually aware of a substantial risk that serious inmate harm will result" as a result of his or her actions or inactions and have disregarded that risk. See Salahuddin, 467 F.3d at 279–80. The fact that a prison

---

Supp. at 22–26, or that she is entitled to qualified immunity, see id. at 26–27.

official did not alleviate a significant risk that he should have, but did not, perceive does not constitute deliberate indifference.  See Farmer, 511 U.S. at 838.

Furthermore, a showing of negligence or medical malpractice does not support an Eighth Amendment claim, unless it involves culpable recklessness.  See Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003).  Thus, "not every lapse in prison medical care will rise to the level of a constitutional violation."  See Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003) (citing, inter alia, Estelle, 429 U.S. at 105–06).  In certain situations, however, "instances of medical malpractice may rise to the level of deliberate indifference[,] namely, when the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces a conscious disregard of a substantial risk of serious harm."  Hathaway, 99 F.3d at 553 (internal quotation marks and citation omitted).

### 1.    Deliberate Indifference Before February 2015

Dr. Perelmuter initially contends that Braham did not suffer from a serious dental condition.  See Mem. in Supp. at 24–25.  Braham disagrees.  See Mem. in Opp'n at 19–23.

The court notes that neither Braham nor Dr. Perelmuter has submitted evidence showing the date on which Dr. Perelmuter began working as a dentist at Cheshire. Furthermore, there is no evidence that Braham made Dr. Perelmuter aware of his need for the extraction of wisdom teeth numbers 17 and 32 or that Dr. Perelmuter was otherwise aware of the URC's approval for the extraction of those teeth from the URC's approval through the date of Braham's first visit with Dr. Perelmuter in February 2015. Braham testified at his deposition that he was not sure that Dr. Perelmuter was aware of

his dental needs, because he did not seek an appointment with Dr. Perelmuter at any time from March 2014 through January 2015. See Braham Dep. Tr. at 69:1–69:10. In addition, Braham concedes that he did not seek an appointment with Dr. Perelmuter in February 2015. See id. at 31:23–32:11. Rather, Dr. Perelmuter summoned him to the dental clinic for an appointment. See id.

Thus, there is no evidence that Dr. Perelmuter was aware of the delay in the scheduling of the extractions of wisdom teeth numbers 17 and 32 until February 4, 2015, when he examined Braham. In fact, in the Second Amended Complaint, the claim regarding the delay in treatment is attributed to Nurse Susan O'Loughlin, who allegedly failed to schedule the extractions. See SAC at 5–6 ¶¶ 41–57.

2.    Objective Prong: Serious Dental Need

In view of the facts above, the court considers the seriousness component of the Eighth Amendment standard as it applies to Braham's dental condition when Dr. Perelmuter examined him on February 4, 2015. At the time of Dr. Perelmuter's examination of Braham on February 4, 2015, Braham still suffered from impacted wisdom teeth and pockets that had formed in between the teeth. See Motion, Ex. 7 at 51. After examining Braham on February 4, 2015, Dr. Perelmuter reported that there was evidence of decay in teeth numbers 18 and 31. See id. Dr. Perelmuter was of the view that those teeth were not restorable and should be extracted, and that the two wisdom teeth, numbers 17 and 32, were not decayed and did not need to be extracted. See id. Braham testified at his deposition that Dr. Perelmuter informed him during the February 4, 2015 exam that, if he did not agree to the extraction of teeth numbers 18 and 31, he would experience radiating pain in his ears and a swollen jaw. See Braham

Dep. Tr. at 33:22–34:9.  Dr. Perelmuter met with Braham again on February 20, 2015 and informed him that teeth numbers 18 and 31 were decayed and must be extracted, as no other treatment was available.  See Motion, Ex. 7 at 49.  Thus, in February 2015, Dr. Perelmuter concluded that the condition of Braham's second molars and wisdom teeth were worthy of comment and treatment.

Dr. Benoit avers that the x-rays showed no decay in teeth 18 and 31 in 2014, but that in 2015, there was evidence of decay in both teeth.  See Motion, Ex. 10 (Doc. No. 137-11) at 14 ¶¶ 120–123.  Dr. Benoit's examination of Braham in July 2015, reflected: (1) that Braham might lose the second molars—teeth numbers 18 and 31— because the prognosis of those teeth was "questionable"; and (2) that the wisdom teeth, numbers 17 and 32, adjacent to those molars might not function properly if they in fact fully erupted, in which case they might have to be extracted.  See id. at 8–9 ¶¶ 69, 72– 74.  Thus, the defendants' own expert has opined that Braham's dental condition was worthy of comment and treatment.

The court concludes that the evidence presented by both parties demonstrates that Braham suffered from a dental condition that was worthy of comment and dental treatment as of February 4, 2015, which condition gave rise to a serious dental need. See Chance, 143 F.3d at 702–03 (holding that tooth cavity that will degenerate with increasingly serious implications, if neglected over sufficient time, presents serious medical need).  Accordingly, the Motion for Summary Judgment is denied, insofar as it argues that Braham did not suffer from a serious dental need at the time Dr. Perelmuter examined him in February 2015.

3.    Subjective Prong: Deliberate Indifference

Dr. Perelmuter contends that, even if Braham's dental need was serious in February 2015, he was not deliberately indifferent to that need.  See Mem. in Supp. at 25.  Braham argues that Dr. Perelmuter's course of treatment involving the extraction of the second molars and not his wisdom teeth was not supported by sound medical judgment.  See Mem. in Opp'n at 19–23.

Braham claims that, in February 2015, Dr. Perelmuter incorrectly diagnosed two of his second molars—teeth numbers 18 and 31—as being significantly decayed, not amenable to restoration and requiring extraction.  See Mem. in Opp'n at 22 ("[T]here was still time to save the adjacent molars.").  Braham contends that Dr. Perelmuter did not present him with a treatment plan, but rather an ultimatum—that he must agree to have the second molars extracted or no treatment would be provided to him.  See Mem. in Opp'n at 21 ("Perelmuter's refusal to treat Braham unless he consented to the extraction of the molars adjacent to his wisdom teeth constitutes deliberate indifference to his serious dental needs.").

The parties disagree regarding the presence of decay in Braham's second molars, teeth numbers 18 and 31, as of February 4, 2015.  Dr. Perelmuter believed that decay was present in both of those second molars and, because neither tooth could be salvaged or repaired, both teeth should be extracted because Correctional Managed Health Care did not permit or allow inmates to undergo root canals or to have crowns applied to posterior teeth.  See Motion, Ex. 7 at 49, 51.  Braham argues that Dr. Perelmuter could not have been aware of the presence or degree of decay in teeth numbers 18 and 31, because he had not taken an x-ray of those teeth.  See Opp'n,

Ex. A at 10 ¶ 66.  Braham contends that, even if decay was present at that time, Dr. Perelmuter should have offered an option of attempting to restore the second molars, rather than pulling them and that he should have recommended that the wisdom teeth be extracted because they were causing him pain.  <u>See</u> Mem. in Opp'n at 22.

Dr. Perelmuter characterizes Braham's claim as a "mere disagreement with Perelmuter about what constitutes appropriate case . . . ."  Mem. in Supp. at 25. Braham contends that the decision by Dr. Perelmuter was not based on sound dental judgment, but instead on what was an easier and less expensive course of treatment. <u>See</u> Mem. in Opp'n at 22.

Courts have held that an inmate does not have a right to the medical or dental treatment of his or her choice.  <u>See</u> <u>Hill v. Curcione</u>, 657 F.3d 116, 123 (2d Cir. 2011) ("It has long been the rule that a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment." (citing <u>Estelle</u>, 429 U.S. at 106– 07)); <u>Chance</u>, 143 F.3d at 703 ("So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." (citing <u>Dean v. Coughlin</u>, 804 F.2d 207, 215 (2d Cir. 1986))).  In addition, a difference of opinion between an inmate and medical professionals, or even among medical professionals themselves, as to the appropriate course of treatment, does not in and of itself amount to deliberate indifference.  <u>See</u> <u>Hathaway v. Coughlin</u>, 37 F.3d 63, 70 (2d Cir. 1994) (Jacobs, J., dissenting) ("We do not sit as a medical board of review.  Where the dispute concerns not the absence of help, but the choice of a certain course of treatment, or evidences mere disagreement with considered medical judgment, we will not second guess the doctors." (quoting <u>Sires v. Berman</u>, 834 F.2d 9,

13 (1st Cir. 1987))); Veloz v. New York, 339 F. Supp. 2d 505, 525 (S.D.N.Y. 2004) ("Differences in opinion by a doctor and a prisoner over the appropriate medication to be prescribed is a disagreement over a treatment plan and does not implicate the Eighth Amendment." (citation omitted)), aff'd, 178 F. App'x 39 (2d Cir. 2006) (summary order).

The court considers Braham's claim to be more than a simple disagreement with a treatment plan. Rather, it is a claim that the treatment chosen or recommended by Dr. Perelmuter was not based on sound dental judgment. "Whether a course of treatment was the product of sound medical judgment, negligence, or deliberate indifference depends on the facts of the case." Chance, 143 F.3d at 703. In Chance, the Second Circuit held that dental procedures that were recommended on the basis of ulterior motives—there, monetary incentives—rather than on the basis of medical views, "if proven true, would show that the defendants had a culpable state of mind and that their choice of treatment was intentionally wrong and did not derive from sound medical judgment." Id. at 704.

Dr. Perelmuter has not filed an affidavit in support of the Motion for Summary Judgment. Furthermore, Dr. Benoit, who has been identified as the defendants' expert witness, has provided an opinion that is ambiguous as to whether the recommendation by Dr. Perelmuter in February 2015, was an appropriate course of treatment for Braham's dental needs. Dr. Benoit opines that, before he examined Braham, he had concluded that Dr. Perelmuter's course of dental treatment involving extraction of teeth numbers 18 and 31 was sound. See Motion, Ex. 10 at 13 ¶ 117. After his exam of Braham in July 2015, however, Dr. Benoit changed his opinion regarding the soundness

36

of Dr. Perelmuter's recommended course of treatment.  See id. at 14 ¶ 119.  Dr. Benoit

could not rule out the possibility that teeth numbers 18 and 31 were restorable and that,

if those teeth were extracted, the wisdom teeth numbers 17 and 32 would either not

function properly or might have to be extracted if they remained impacted.  See id. at 14

¶¶ 119–24.  Confusingly, Dr. Benoit returns to his initial view later in his Affidavit, where

he states that Dr. Perelmuter's treatment plan was sound.  See id. at 17 ¶ 138.

      In the absence of an affidavit from Dr. Perelmuter and in light of the ambiguous

Affidavit of Dr. Benoit, the court concludes that there are genuine issues of material fact

in dispute as to whether the course of treatment prescribed by Dr. Perelmuter in

February 2015 derived from sound medical judgment.  See Chance, 143 F.3d at 703–

04 (identifying possibility of deliberate indifference if physician consciously chooses

easier or less effective treatment based on "ulterior motives"); Keitt v. Schun, No. 11–

cv–438, 2014 WL 347053, at *6 (W.D.N.Y. Jan. 30, 2014) (approving recommended

ruling denying motion to dismiss claims of deliberate indifference to medical needs

against four prison doctors, where plaintiff's allegations suggested their disagreement

with outside specialist's treatment recommendation was not based on medical

judgment); McKenna v. Wright, No. 01–cv—6571 (WK), 2002 WL 338375, at *8

(S.D.N.Y. Mar. 4, 2002) (acknowledging that "a plaintiff may be able to state an Eighth

Amendment claim where a doctor acts without medical justification" (citation omitted)).

      Based on the evidence presented, a jury might infer that Dr. Perelmuter chose

the easier route of extracting the second molars in Braham's lower jaw, instead of trying

to restore them, in spite of the possibility that Braham might also lose his wisdom teeth

in his lower jaw.  This course of treatment would lead to the unnecessary loss of two

potentially restorable molars which would make it more difficult for Braham to eat and chew his food.

Accordingly, the court concludes that Dr. Perelmuter has not met his burden of demonstrating the absence of a material fact in dispute regarding the subjective prong of Braham's Eighth Amendment claim. Thus, the Motion for Summary Judgment is denied as to the Eighth Amendment claim against Dr. Perelmuter, because there are material facts in dispute as to both the objective and subjective prongs of the claim.

F.    Qualified Immunity

Dr. Perelmuter argues that, even if the evidence demonstrates that he violated the Braham's Eighth Amendment rights, he is entitled to qualified immunity because he acted in an objectively reasonable manner. See Mem. in Supp. at 26–27. Braham contends that Dr. Perelmuter did not act in a reasonable manner in refusing to extract his wisdom teeth and in insisting on the extraction of his second molars instead of trying to restore them. See Mem. in Opp'n at 23–24.

"[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). An official is entitled to qualified immunity unless (1) the facts alleged or shown by the plaintiff state a violation of a statutory or constitutional right by the official and (2) the right was "clearly established" at the time of the challenged conduct. See Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (citing Harlow, 457 U.S. at 818). The Supreme Court has held that district courts have the discretion to choose which of the two prongs of the

qualified immunity standard to analyze first, in view of the particular circumstances of the case to be decided.  See Pearson, 555 U.S. at 236.

Under the second prong, a right is clearly established if, "at the time of the challenged conduct . . . every 'reasonable official would have understood that what he is doing violates that right.'" al-Kidd, 563 U.S. at 741 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  There is no requirement that a case have been decided which is directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate." Id. (citations omitted).  "[A] broad general proposition" does not constitute a clearly established right.  Reichle v. Howards, 566 U.S. 658, 132 S. Ct. 2088, 2094 (2012) (citation omitted).  Rather, the constitutional right allegedly violated must be established "in a 'particularized' sense so that the 'contours' of the right are clear to a reasonable official."  Id. (quoting Anderson, 483 U.S. at 640).

Recently, the Supreme Court addressed the issue of qualified immunity and stated that "it is again necessary to reiterate the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" White v. Pauly, ---U.S. ---, 137 S. Ct. 548, 552 (2017) (per curiam) (quoting al-Kidd, 563 U.S. at 742).  "As this Court explained decades ago, the clearly established law must be 'particularized' to the facts of the case."  Id. (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

In February 2015, it was clearly established that deliberate indifference to a serious dental condition violated the Eighth Amendment and that a course of dental treatment that was not based on sound medical judgment constituted deliberate indifference.  See Harrison, 219 F.3d at 136–37 (applying deliberate indifference standard in Estelle to claim of untreated tooth cavity); Chance, 143 F.3d at 703–04

(holding that physician may be deliberately indifferent if he or she consciously chooses easier or less effective treatment that is not based on sound medical judgment). As indicated above, the court has concluded that Dr. Perelmuter has failed to demonstrate the absence of a genuine issue of material fact with regard to the deliberate indifference prong of the Eighth Amendment claim.

Dr. Perelmuter argues that, even if Braham has put forth sufficient facts to support a violation of his constitutional rights, his recommended course of treatment was objectively reasonable based on the particular facts of this case. See Mem. in Supp. at 27. He further contends that a reasonable dental provider would not have understood that prescribing a different treatment plan to resolve Braham's dental needs violated the Eighth Amendment. See id. The court has concluded that issues of fact related to whether Dr. Perelmuter's recommended course of treatment was based on sound dental judgment preclude a determination that Dr. Perelmuter was not deliberately indifferent to Braham's serious dental needs. See supra Parts IV.E.2–3. These same issues of fact preclude a finding that Perelmuter is entitled to qualified immunity. See Thomas v. Roach, 165 F.3d 137, 143 (2d Cir.1999) ("Summary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness." (citation omitted)); Hathaway, 37 F.3d at 69 ("Assuming that [defendant] was deliberately indifferent to [plaintiff's] serious medical needs, he is not entitled to qualified immunity because it would not be objectively reasonable for him to believe his conduct did not violate [plaintiff's] rights."); Maye v. Vargas, 638 F. Supp. 2d 256, 262 (D. Conn. 2009) ("Although qualified immunity is a question of law, because issue of reasonableness

depends on the facts of the situation, if there is a dispute as to the facts, that must be resolved by the factfinder before qualified immunity can be granted." (citing Zellner v. Summerlin, 494 F.3d 344, 368 (2d Cir. 2007)).

Dr. Perelmuter has not met his burden of demonstrating the absence of a genuine dispute as to a material fact with regard to the deliberate indifference prong of the Eighth Amendment standard, or that deliberate indifference to serious dental needs was not a "clearly established" violation of the Eighth Amendment under controlling Second Circuit precedent. Accordingly, the Motion for Summary Judgment is denied, insofar as it argues that Dr. Perelmuter is entitled to qualified immunity.

## V.    CONCLUSION

The defendants' Motion for Summary Judgment (Doc. No. 137) is **GRANTED IN PART** and **DENIED IN PART**. The Motion is granted as to all requests for declaratory relief, the Eighth Amendment claim against Health Administrator Brown in her individual capacity, and the First Amendment retaliation claim against Dr. Perelmuter in his individual capacity. The Motion is denied as to the Eighth Amendment claim against Nurse O'Loughlin in her individual capacity and as to the Eighth Amendment claim against Dr. Perelmuter in his individual capacity. Thus, judgment has entered in favor of defendants as to all claims against Dr. Wu, Commissioner Semple, and Health Administrator Brown. The Eighth Amendment claims against Dr. Perelmuter and Nurse O'Loughlin in their individual capacities are the only claims that remain pending.

**SO ORDERED**.

Dated at New Haven, Connecticut this 28th day of July, 2017.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge